378 A.2d 1057.

ELLIOTT MACGREGOR STRAUSS *et al. vs.*
MICHAEL C. VAN BEUREN *et al.*

OCTOBER 7, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

Joslin, J.   This is a will construction case. The plaintiffs are the trustees under the will of Mary A. van Beuren, late of Middletown. It is represented that all known parties who may have any interest in the cause have been joined as defendants. A guardian ad litem has been appointed to represent the interests of the minor defendants and the contingent interest of persons not in being, unascertained, or who might otherwise be affected by the cause. In the Superior Court the trustees and the adult defendants urged one construction of the will, the guardian another. The trial justice accepted the construction advanced by the trustees and the guardian appealed.

It appears that the testatrix died on February 25, 1951, survived by an only son, Archbold. He died on December 8, 1974, leaving four surviving children. Not long thereafter, the trustees were requested to exercise their discretionary power under the testatix's testamentary trust to make principal distributions to two of those children. In their complaint the trustees indicate that they were prepared to honor those requests, but that they were uncertain whether the distributions should be charged against separate trusts or against separate accounts in a single trust, established in

each instance for the initial benefit of the requesting child. It was to resolve that uncertainty that the trustees commenced this action.

We begin with a brief review of the pertinent dispositive provisions. They are contained in Article Fourth of the will,[1] in which the testatrix created a trust of the residue of her estate. Subdivision (a) of that article directs the trustees to pay the net income during Archbold's lifetime to him and to each of his living children 21 years of age or older. Subdivision (b) instructs them, upon Archbold's death, to pay the net income to his then living children and to the issue of any deceased child[2] and, upon the death of the last survivor of those of Archbold's children and descendants who were living at the time of the testatrix's death, to distribute the corpus to Archbold's then living children and to the issue of any deceased child. Finally, subdivision (c) authorizes the trustees following Archbold's death to make discretionary payments of principal to his children after they have reached the age of 35.

The issue is whether in the execution of this estate plan, and particularly in making the requested principal distributions, the trustees should administer the funds in their possession as a single trust or as multiple trusts. On this question, as on others relating to the construction of wills, our initial and primary obligation is to ascertain, if possible, the dispositive intent expressed in the will in its entirety and in the light of the circumstances attendant on its formulation. If ascertainable and not contrary to law, that intention must be given effect. *Lux* v. *Lux*, 109 R.I. 592, 596, 288 A.2d 701, 704 (1972); *MacDonald* v. *Manning*, 103 R.I. 538, 544-45, 239 A.2d 640, 644 (1968).

Each of the parties argues that the testatrix's intention is controlled by her use of the singular or the plural of certain key words and expressions. The plaintiffs, for example, rely

---

[1]Article Fourth is reproduced in full in an appendix to this opinion.

[2]None has deceased.

particularly on language appearing in subdivision (c) of Article Fourth which they assert would be utterly without meaning unless the will were construed as manifesting an intention to create multiple trusts upon Archbold's death. By that language the testatrix authorized her trustees, "[w]ith respect to *each trust* hereinabove created in subdivision (b) hereof * * * after the death of my son, to withdraw [funds] *from the principal of each of such trusts*" and to pay such withdrawals to the grandchild "from the principal from which such grandchild is then receiving income * * * ." (Emphasis added.)

In addition, they call our attention to Article Fifth which permits income to be applied for the benefit of minor beneficiaries "under *any of the trusts* created above in Article Fourth" and for payment of principal remaining in "the *particular trust*" (emphasis added), and to Article Sixth, which sets out the trustees' powers and provides in subdivision (f) for the cost of investment counsel to be apportioned among the "*several trust estates*" and in subdivision (i) for the improvement of any real property in "*the trust estates.*" (Emphasis added.)

The guardian, on the other hand, argues that the language in subdivision (c) of Article Fourth relied on by plaintiffs indicates an intention to create several accounts within a single trust, rather than multiple trusts. He also points to subdivision (a) of Article Fourth which provides that income from "*the trust*" during Archbold's life should be divided between him and his children, and to subdivisions (h) and (j) of Article Sixth, which refer to "*my residuary trust* created under the provisions of Article Fourth." (Emphasis added.)

We are mindful that some courts in searching for dispositive intention have held that the use of the singular or the plural of a word like "trust," though not conclusive, is entitled to serious consideration. *See Huntington Nat'l Bank* v. *Commissioner of Internal Revenue,* 90 F.2d 876, 878 (6th

Cir. 1937); *Langford Inv. Co.* v. *Commissioner of Internal Revenue,* 77 F.2d 468, 470 (5th Cir. 1935). We are also aware that there are other cases where such usage is of no particular significance. As Judge Learned Hand so aptly said in one such case, "We do not believe that it would make the least difference * * * how often, or how consistently, the testator used the singular or the plural * * * ." *McHarg* v. *Fitzpatrick,* 210 F.2d 792, 794 (2d Cir. 1954).

In this case, the testatrix's indiscriminate use of both the singular and the plural, rather than shedding any light on her intention, shrouds it in obscurity; instead of resolving doubts, it creates ambiguity. Moreover, her lack of consistency in this regard does not seem to be reasonably attributable to oversight or, as plaintiffs contend, to "somewhat casual drafting." Rather, it suggests that she failed to consider whether her estate plan would be better implemented by establishing a single trust or multiple trusts. Certainly, appropriate language for effectuating either choice was readily available and could have been utilized had the question either occurred to her or been brought to her attention.

In these circumstances a search for a hidden meaning would be fruitless, for none exists. What we do instead is attempt to discover what the testatrix would have done had she foreseen the problem now facing her trustees. *Manufacturers Nat'l Bank* v. *McCoy,* 100 R.I. 154, 158-59, 212 A.2d 53, 55 (1965); *accord, Davison* v. *Deslauriers,* 109 R.I. 541, 548, 288 A.2d 250, 254 (1972); *Industrial Nat'l Bank* v. *Barrett,* 101 R.I 89, 98, 220 A.2d 517, 523 (1966). We assume that she would have acted as would a reasonable testatrix and that she would have been desirous of achieving a fair and just result. *Alumnae Ass'n of the Newport Hosp. School of Nursing* v. *DeSimone,* 106 R.I. 196, 198, 258 A.2d 80, 82 (1969).

With these general principles in mind we believe that an inquiring and intelligent approach to the problem would have suggested to the testatrix that investment, tax, and

perhaps other considerations would make it advantageous for her to opt for multiple trusts. From the investment point of view, that choice would permit the trustees to adopt investment policies for each of the trusts specifically geared to the needs of its beneficiaries. That same freedom in investment choices would not be available if there were but a single trust with a division of income among the beneficiaries. *See* 2 Scott, *Trusts* §179.2 at 1432 (3d ed. 1967).

Multiple trusts would also have tax advantages over a single trust. To be sure, those advantages would be limited to capital gains taxes because the ordinary trust income is currently distributable and therefore taxable to the beneficiaries and not to the trustees. But it is represented that the trust assets are substantial, and consequently the capital gains tax on a sale of capital assets resulting in a large gain would be less if the assets sold came in equal amounts from several smaller trusts rather than from a single large trust. That there would be such a saving is, of course, significant regarding the presumed dispositive intent. As the Supreme Judicial Court of Massachusetts but recently stated in *Putnam* v. *Putnam*, 366 Mass. 261, 271, 316 N.E.2d 729, 737 (1974),

> "[I]t would be a rare case in which a conflict of terms or an ambiguity in a will should be resolved by attributing to the testator an intention which as a practical matter is likely to benefit the taxing authorities and no one else. [citation omitted] A testator who wishes to make a gift to a State and country can do so directly, and he should not be presumed to have intended such a gift by indirect means."

These considerations, in the absence of any to the contrary advanced by the guardian, have convinced us that the testatrix, had she been thoroughly advised and then reflected on the matter, would have opted for multiple trusts. Accordingly, we hold that upon Archbold's death on December 8, 1974, four separate trusts were created, one

for the initial benefit of each of his surviving children.

The guardian ad litem's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

## Appendix

FOURTH: All the rest, residue and remainder of the real and personal property of every kind and description and wheresoever situate which I may own at the time of my death, including any property over which I may have power of appointment, which power I hereby exercise, I give, devise, and bequeath to my Trustees, hereinafter named, and to their successors, IN TRUST, for the following uses and purposes:

(a) After deducting all necessary and proper charges and expenses of the trust to pay out of the net income of the trust, the sum of Two Thousand Six Hundred Dollars ($2,600) each year in weekly installments to each of the children of my son, ARCHBOLD vanBEUREN, who shall have arrived at the age of twenty-one years until such child arrives at the age of twenty-five years, and thereafter the sum of Five Thousand Dollars ($5,000), each year in monthly installments, until the death of such child or until the death of my son, whichever event shall first occur, and to pay over the balance of the net income therefrom in quarterly installments to my son, ARCHBOLD vanBEUREN, during his life.

(b) Upon the death of my son, ARCHBOLD vanBEUREN, or should he predecease me, then upon my death, the Trustees are directed to divide the net income quarter-yearly during the continuance of the trust into as many parts as at each time of quarterly distribution there shall be children of my son, ARCHBOLD vanBEUREN, then living and children of my said son then dead, represented by descendants then living, and to subdivide the part falling to each set of living descendants among them per stirpes and to pay over at each time of quarterly distribution unto each child and descendant who shall thus be found entitled, his or her share of said net income, and upon the death of the last survivor of the children and descendants of my son who shall have been living at the time of my decease, to divide the principal into as many parts as at that time there shall be children of my son, then living and children of my son then dead, represented by descendants then living and to subdivide the part falling to each set of living descendants among them per stirpes and to pay over and convey to each child and descendant who shall thus be found entitled his or her part of said principal, his or her heirs and assigns forever. The foregoing provisions shall include children and descendants of my son who may be born after the execution of my Will, or after my death as well as children and descendants living at the execution of my Will.

(c) With respect to each trust hereinabove created in subdivision (b) hereof for the benefit of a child of my son, ARCHBOLD vanBEUREN, I authorize my Trustees in their sole and absolute discretion after the death of my son, to withdraw from the principal of each of such trusts and advance and pay to such grandchild of mine who shall have attained the age of twenty-one years, from the principal from which such grandchild is then receiving income, a sum of money not to exceed twenty-five (25%) percent of the then market value thereof; and to any such grandchild of **mine who shall have attained the age of thirty years, either** (1) **A** sum of money, from the principal from which such grandchild is then receiving income, not to exceed fifty (50%) percent of the then market value thereof if such grandchild of mine shall not theretofore have received any advance after having attained the age of twenty-one years, or (2) if he or she shall have received an advance after having attained the age of twenty-one years, a sum of money, from the principal from which such grandchild is then receiving income, not to exceed one-third ($\frac{1}{3}$) of the then market value of the remaining principal in his trust; and to any such grandchild of mine who shall have attained the age of thirty-five years, the entire balance of the principal from which such grandchild is then receiving income. Such advances shall be purely discretionary with my Trustees, but when and if made, they shall be freed of any trust or restriction and my Trustees shall be absolutely and completely discharged to the extent of the amount of such payment or payments.

*Edwards & Angell, Knight Edwards, James H. Barnett, Kinnaird Howland,* for plaintiffs.

*Andrew H. Davis, Jr., Rae B. Condon* (for Guardian Ad Litem, Andrew H. Davis, Jr.).