NORTH CAROLINA NATIONAL BANK AND ETHEL STOWE, AS TRUSTEES OF THE TRUSTS CREATED UNDER ITEMS VII & VIII OF THE WILL OF ALLISON LLOYD GOODE v. ALSON LLOYD GOODE, JR.; KATHRYN GOODE CLARK; ALSON LLOYD GOODE, III; WINSTON GLASGOW GOODE; KATHRYN KING GOODE; DAVID CLARK, JR.; ALLISON THORNE CLARK; WALTER CLARK; CAROLINE CLARK; THE UNKNOWN AND UNBORN CHILDREN OF ALSON LLOYD GOODE, JR. AND KATHRYN GOODE CLARK AND THE ISSUE OF SUCH UNKNOWN AND UNBORN CHILDREN; THE UNKNOWN AND UNBORN ISSUE OF ALSON LLOYD GOODE, III, WINSTON GLASGOW GOODE, KATHRYN KING GOODE; DAVID CLARK, JR., ALLISON THORNE CLARK, WALTER CLARK AND CAROLINE CLARK

No. 102

(Filed 6 November 1979)

1. **Wills § 38— creation of individual trusts for grandchildren—sufficiency of evidence**

Evidence was sufficient to support the trial court's conclusion that a will created seven separate trusts for the seven grandchildren of testator living at the time of his death where such evidence tended to show that (1) the language of the will itself strongly suggested separate trusts where it provided that the "share" of a deceased grandchild should retain its individual existence "in trust" for that grandchild's issue, provided that "a trust" should not be set up under certain circumstances for a grandchild born after testator's death, and referred to a beneficiary's entitlement as "his or her distribution of the principal or corpus of the trust held for him or her"; (2) the testator had consistently handled his personal and corporate financial affairs to minimize the bite of federal and state taxes, and the conclusion was therefore permissible that testator sought also to minimize the tax liability of his testamentary dispositions by providing for separate trusts for his beneficiaries, particularly in light of the fact that the tax savings resulting from such disposition would be enjoyed by the very persons testator selected as beneficiaries; and (3) the will provided that each "share" should be managed by the trustees to fit the needs of the individual beneficiary to whom the share

belonged, and the trustees, since the initial funding, had themselves managed the shares as separate and independent trusts.

**2. Wills § 65— afterborn grandchildren—trust provided for in will**

Where testator's will provided that no grandchild born after testator's death "shall become a beneficiary under this Will . . . and a trust shall not be set up hereunder for him or her if such grandchild shall have been born subsequent to the time when any beneficiary hereunder . . . shall have become entitled to receive . . . distribution of the principal or corpus of the trust held for him or her," the will is interpreted to modify the limitation as to afterborn grandchildren so as to exclude only those grandchildren born after testator's death *and* after the first date of entitlement to the trust corpus by any other beneficiary.

**3. Wills § 44— trusts set up for grandchildren—death of grandchild—corpus distributed to issue per capita**

The trial court properly concluded that provisions of testator's will directed that any property remaining in the established trust of a deceased grandchild should be held in trust for that grandchild's issue until the date of final distribution, at which time the then surviving issue of the deceased grandchild should share *per capita* in the separate trust estate.

Justice CARLTON did not participate in the consideration or decision of this case.

APPEAL by H. Morrison Johnston, Guardian Ad Litem for Kathryn King Goode and Caroline Clark and the Unknown and Unborn Issue of Alson Lloyd Goode, III, Winston Glasgow Goode, Kathryn King Goode, David Clark, Jr., Allison Thorne Clark, Walter Clark and Caroline Clark, from a judgment entered 21 September 1978 by *Judge Grist* in the Schedule A Mixed Session of MECKLENBURG Superior Court. Petition for discretionary review under G.S. 7A-31, prior to review by the Court of Appeals, allowed 4 January 1979. This case was docketed and argued as No. 30, Spring Term, 1979.

*Fleming, Robinson, Bradshaw and Hinson, by Neill G. McBryde and Peter C. Buck, Attorneys for plaintiff appellees.*

*H. Morrison Johnston for defendant appellants.*

EXUM, Justice.

Plaintiff trustees instituted this action under our Declaratory Judgment Act, G.S. 1-253 *et seq.*, seeking a construction of the will of Allison Lloyd Goode, who died 14 August 1968. The will was written by the testator himself and was properly executed on

31 August 1965. A codicil, immaterial to this dispute, was executed 30 December 1966. The will provides in pertinent part as follows:

## "ITEM VIII.

The remainder of my estate shall be held in trust for the benefit of grandchildren of mine who may be living at the time of my death, and said trust shall be administered and disbursed equally as follows:

(a) If, in the opinion of my Trustees, sickness or an emergency arises with any beneficiary, the Trustees shall advance any money the Trustees deem adequate. Any money so advanced shall be deducted from said beneficiary's share at the time of final distribution.

(b) Distribution of the estate shall be made by the Trustees at the time Caroline Clark becomes twenty-six years of age, or should she die before she becomes twenty-six, then at such time as she would have been twenty-six.

(c) If any beneficiary should die before his or her share is received by him or her, and leaving issue, then their share shall be held in trust for the issue of such beneficiary until he or she becomes twenty-one years of age, and shall be administered and disbursed in the same manner as the trust created hereunder. If the beneficiary does not leave issue, their share shall immediately be and become a part of the trust to be divided among the remaining beneficiaries, and not to any relatives whatsoever.

(d) Notwithstanding any provisions hereinbefore contained to the contrary, no grandchild of mine born after my death shall become a beneficiary under this Will, and a trust shall not be set up hereunder for him or her if such grandchild shall have been born subsequent to the time when any beneficiary hereunder, a grandchild of mine or the issue of a grandchild of mine, shall have become entitled to receive his or her distribution of the principal or corpus of the trust held for him or her; provided, however, that a distribution of the corpus or principal under the provisions of Subsection (a) of this Item VIII shall not be considered a distribution thereof under this Subsection (d).

(e) In making a distribution of income among the several beneficiaries of this my Will, the action of my Trustees in this connection shall be binding upon all the beneficiaries hereunder and shall not be subject to question by any one whether or not the distributions are equal, it being my intention that my said Trustees shall have full authority to exercise this discretion with reference to the distribution of such income, and this shall likewise apply to any distributions of principal or corpus made under the provisions of Subsection (a) of this Item VIII.

ITEM IX.

Notwithstanding any of the provisions herein contained to the contrary, I do direct that distribution of income or principal to or among the issue of my grandchildren shall be per capita and not per stirpes."

Upon distribution to plaintiffs as trustees in 1973, they divided the residuary estate into seven equal shares and managed each share as a separate "trust" for the benefit of each of the testator's seven grandchildren living at his death. During subsequent taxable years, plaintiffs filed separate federal and state tax returns for each of the individual shares. In October, 1976, the District Director of the Internal Revenue Service notified plaintiffs of proposed adjustments to federal income tax liability of the trusts for taxable years 1973 and 1974. A tax deficiency was ultimately assessed by the Service on the theory that testator's will created a single trust for multiple beneficiaries rather than seven independent trusts as plaintiffs contended.[1] Plaintiffs paid the alleged deficiency; they then filed this action for construction of the will in Mecklenburg Superior Court which came on for hearing before Judge Grist.

After reviewing the evidence and arguments of counsel, Judge Grist entered findings of fact and conclusions of law interpreting the will. His judgment provided in pertinent part that:

(1) The will of Allison Lloyd Goode created seven separate trusts for the benefit of his seven grandchildren living at his death;

---

1. Treating the residuary estate as a single trust corpus, the Internal Revenue Service computed the trust's income tax liability for 1973 and 1974 as $127,086.30. This amount exceeded the tax earlier paid on the separate shares by $69,575.30.

(2) The will further established additional separate trusts for any grandchildren born after the testator's death but before the date of termination of the trust and final distribution of the residuary estate (10 December 1988)[2];

(3) The trust interest of any grandchild beneficiary who predeceases the date of distribution shall continue to be held in trust for that grandchild's issue and distributed *per capita* to the grandchild's issue surviving at the time of termination of the trust or distributed equally among the remaining trusts should no such issue be then surviving.

All of these conclusions are before us for review.[3] We find no error in any of them. The judgment is affirmed.

As in any case requiring the construction of a will, we are mindful of the warning by Justice, later Chief Justice, Parker that "[p]robing the minds of persons long dead as to what they meant by words used when they walked this earth in the flesh is, at best, perilous labor." *Gatling v. Gatling*, 239 N.C. 215, 221, 79 S.E. 2d 466, 471 (1954). Nevertheless, it is our fundamental duty to give effect to a testator's intent, at least insofar as that intent does not conflict with the demands of law or public policy. *North Carolina National Bank v. Carpenter*, 280 N.C. 705, 187 S.E. 2d 5 (1972). And the intent which controls is that which is gleaned from the writing of the testament in its entirety. Every word and phrase in the instrument has its place and none ought to be rejected. Each should be given a meaning that, wherever possible, harmonizes with the other. "Every string should give its sound." *Edens v. Williams*, 7 N.C. (3 Mur.) 27, 31 (1819). But where parts conflict and lead to ambiguity, their discord must be resolved in light of the prevailing purpose of the whole. To this end we must examine the will in light of the facts and circumstances known to the testator at the time of the instrument's execution. *Worsley v.*

2. Item VIII(b) sets the time of final distribution as the date of the twenty-sixth birthday of Caroline Clark, testator's youngest grandchild living at his death. This date was stipulated by the parties as December 10, 1988, some twenty years after testator's death.

3. Judge Grist's conclusion that the will creates separate trusts is technically not disputed here, inasmuch as the briefs of both appellants and appellees argue in favor of separate trusts. However, the question of multiple trusts is the key to testator's dominant dispositive intent. Resolution of the question is necessary to the correct interpretion of other provisions of the will, the construction of which is here challenged. We thus deem the multiple trusts issue to be properly raised, albeit indirectly, by appellants' assignments that other provisions of the judgment are not supported by fact or law. App. Rule 10(a).

*Worlsey,* 260 N.C. 259, 132 S.E. 2d 579 (1963); *Wachovia Bank and Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246 (1956).

[1]  Applying these principles to the will before us, we agree with Judge Grist that its particular terms and provisions, when read together, indicate a testamentary intent to establish individual trusts. Although the singular reference to a "trust" in the preamble to Item VIII may be read in isolation to suggest a single trust corpus managed for the use of all beneficiaries, subsequent language in the will strongly suggests the contrary. Item VIII(c) provides that the "share" of a deceased grandchild shall retain its individual existence "in trust" for that grandchild's issue. Item VIII(d) directs that "*a trust* shall not be set up" under certain circumstances for a grandchild born after testator's death. This same provision then refers to a beneficiary's entitlement to "his or her distribution of the principal or corpus *of the trust held for him or her.*" (Emphasis added.) These latter references weigh heavily in favor of the creation of multiple trusts. *See* Robert L. Moody Trust, 65 T.C. 932 (1976).

The multiple trusts issue is not easily resolved, however, by simply marshalling plural references in the document against singular. *See, e.g., Strauss v. van Beuren,* 378 A. 2d 1057 (R.I. 1977). On the face of the instrument, these terms simply conflict. Too laborious a search for some deep meaning "hidden" in their inconsistency may do no more than further obscure the testator's true intent, and yet it is that intent which must control. *Clark v. Conner,* 253 N.C. 515, 117 S.E. 2d 465 (1960); *Commercial Bank at Winter Park v. United States,* 450 F. 2d 330 (5th Cir. 1971). Certainly there is such an ambiguity here as to the question of multiple trusts to permit the trial court's examination of the circumstances known to the testator and attendant to his execution of the will. *See Wachovia Bank and Trust Co. v. Wolfe, supra,* 243 N.C. 469, 91 S.E. 2d 246.

From affidavits and stipulations before him, Judge Grist found as a fact that testator had consistently handled his personal and corporate financial affairs to minimize the bite of federal and state taxes. The conclusion is then permissible that testator sought also to minimize the tax liability of his testamentary dispositions. A construction of the will in favor of separate trusts would result in substantial tax savings which ultimately accrue to

the benefit of the trusts' beneficiaries, the obvious objects of the testator's bounty. That there would be such savings is alone a significant factor regarding testator's presumed dispositive intent. *Strauss v. van Beuren, supra.* That the savings would be enjoyed by the very persons testator selected as beneficiaries is of even greater significance. Absent a manifest intention to the contrary, a will should be construed to favor the natural or special objects of the testator's bounty. *Coffield v. Peele*, 246 N.C. 661, 100 S.E. 2d 45 (1957); *see, e.g., Howell v. Gentry*, 8 N.C. App. 145, 174 S.E. 2d 61 (1970). There being no clear directive in the will to swell the government's purse, the conclusion is compelling that the testator intended to establish separate trusts in this instance. As was well stated by the Supreme Court of Massachusetts:

> "It would be a rare case in which a conflict of terms or an ambiguity in a will should be resolved by attributing to the testator an intention which as a practical matter is likely to benefit the taxing authorities and no one else. . . . A testator who wishes to make a gift to his State and country can do so directly, and he should not be presumed to have intended such a gift by indirect means." *Putnam v. Putnam*, 366 Mass. 261, 271, 316 N.E. 2d 729, 737 (1974). (Citations omitted.)

Still other considerations support the conclusion that testator intended separate trusts. The provisions of Item VIII in general contemplate that each "share" will be managed by the trustees to fit the needs of the individual beneficiary to whom the share belongs. Item VIII(a) empowers the trustees to advance to a beneficiary money from his or her share in case of sickness or other emergency. Such advancements are to be deducted from the beneficiary's share at final distribution. Treating each of these shares as a separate trust allows the trustees greater flexibility in the adoption of management and investment policies specifically geared to the individual requirements of each beneficiary.[4] *See Strauss v. van Beuren, supra*, 378 A. 2d at 1059; *Lynchburg Trust and Savings Bank v. Commissioner*, 68 F. 2d 356, 360-61 (4th Cir. 1934), *cert. denied*, 292 U.S. 640. Furthermore, since the initial funding the trustees have themselves managed the shares as

---

4. Whether the assets of the several shares are in fact physically separated and independently invested is immaterial to the existence of separate trusts. An undivided interest in a larger corpus may constitute the *res* of a separate trust. *United States Trust Co. v. Commissioner*, 296 U.S. 481, 486-87 (1936). What is important is that the trustees have the legal capacity to manage the shares as separate trusts where needed.

separate and independent trusts. While not controlling, the inter-
pretation of a trust instrument by the trust's appointed managers
is entitled to some weight. *See Davison v. Duke University,* 282
N.C. 676, 714, 194 S.E. 2d 761, 784 (1973); Frank C. Rand Trust, 19
T.C.M. (CCH) 1205, 1214 (1960).

In sum, we find ample support for the trial court's conclusion
that the will created seven separate trusts for the seven grand-
children of Allison Lloyd Goode living at the time of his death.

[2] Judge Grist also concluded that the will establishes a
separate trust for any grandchild of the testator born after the
testator's death but before the 10 December 1988 date of distribu-
tion of the several trusts. The will itself is ambiguous on this
point. It is not at all clear, as appellant contends, that the pre-
amble to Item VIII of the will definitely restricts the operation of
the trusts for the benefit only of grandchildren living at testator's
death. It is true that the first part of paragraph VIII(d) directs
that no grandchild born after the testator's death "shall become a
beneficiary under this Will." The latter part of the very same
sentence, however, continues the limitation as follows,

> "and a trust shall not be set up hereunder for him or her *if
> such granchild shall have been born subsequent to the time
> when any beneficiary hereunder . . . shall have become en-
> titled to receive . . . distribution of the principal or corpus of
> the trust held for him or her."* (Emphasis added.)

If this quoted portion of the will is to be given any effect at all, it
must be read to modify the limitation as to after-born grand-
children so as to exclude only those grandchildren born after the
testator's death *and* after the first date of entitlement of the
trust corpus by any other beneficiary. The trial court so held, and
we agree. Such a construction is the only interpretation possible
which can give effect to every word in VIII(d) while preserving in-
tact the testator's general intent to establish separate trusts for
the benefit of his grandchildren and their issue.[5]

[3] Construing Items VIII(c) and IX of the will, Judge Grist con-
cluded that these provisions direct that any property remaining

---

5. That the individual shares of the present grandchildren might be diminished in order to establish new
shares for after-born grandchildren does not make the several shares so inter-dependent as to negate their
treatment as individual trusts. *See Commercial Bank at Winter Park v. United States, supra,* 450 F. 2d 330;
Frank C. Rand Trust, *supra,* 19 T.C.M. (CCH) 1205.

in the established trust of a deceased grandchild shall continue to be held in trust for that grandchild's issue until the date of final distribution, at which time the then surviving issue of the deceased grandchild shall share *per capita* in the separate trust estate. If any such issue who would take under this provision shall be under twenty-one years of age at the 10 December 1988 distribution date, the *per capita* interest of that issue shall continue in trust until he or she reaches age twenty-one, or shall be distributed to his or her estate in the event of death before age twenty-one. We find that this interpretation substantially accords with the express language of the will. Item VIII(c) specifically provides that the "share" of a beneficiary who predeceases the distribution date "shall be held in trust for the issue of such beneficiary until he or she becomes twenty-one years of age." Item IX expressly directs that distribution of the trust proceeds "to or among the issue of my grandchildren shall be per capita and not per stirpes." Judge Grist's construction of *per capita* distribution is in accordance with the language in the will, with the testator's intent as evidenced in the will, and with the requirements of state law.[6]

For the reasons stated above, the judgment appealed from must be affirmed.

Affirmed.

Justice CARLTON did not participate in the consideration or decision of this case.

---

6. *As construed* by the trial court, Item VIII(c) of the will guarantees that all possible interests in the various trusts become certain and vested no later than the distribution date twenty years after the testator's death. December 10, 1988, triggers both the distribution of the various trusts' assets to the grandchildren then surviving and the per capita distribution of a trust corpus previously held for a deceased grandchild (including a grandchild born after testator's death but deceased before distribution) to that grandchild's issue then surviving. Enjoyment only is postponed as to the interest of such issue who is under twenty-one at the time of distribution. By using the date of distribution to vest all interests and close all subclasses composed of issues of deceased grandchildren, the trial court's construction of VIII(c) avoids any invalidity under the Rule Against Perpetuities. Such a construction is always preferred. *Poindexter v. Wachovia Bank & Trust Co.*, 258 N.C. 371, 377, 128 S.E. 2d 867, 872 (1963); *see also Clarke v. Clarke*, 253 N.C. 156, 116 S.E. 2d 449 (1960); *see generally* Link, The Rule Against Perpetuities in North Carolina, 57 N.C. L. Rev. 727 (1979).