MARY LOUISE ELDRIDGE AND HUSBAND, DONALD E. ELDRIDGE v. JEAN MORGAN AND HUSBAND, CHARLES L. MORGAN, JR., MARY CLAUDIA HOOKER, SINGLE, FRANCES BOND, SINGLE, AND FIRST UNION NATIONAL BANK, INCORPORATED

No. 8725SC439

(Filed 5 January 1988)

**Trusts § 10— action to terminate trust—determination that four separate trusts had been created—no error**

In a declaratory judgment action to terminate a trust and distribute trust assets, the trial court did not err by finding that there were four separate trusts where the will, construed as a whole, provided that income be paid in equal shares; the trustees had discretion to pay out principal only as to the share of each child; trustees were constrained to retain $5,000 for each child during his life; the entire share of a child dying without children or descendants surviving was to be divided among surviving children in equal shares in trust; the use of the plural "trusts" and "respective trust funds" could logically only refer to multiple trusts; and construing the will to establish one trust with concurrent equitable interests would leave uncertainty as to the nature of the equitable estates, the disposition of each child's share if the child died with children or descendants surviving, and the distribution of shares to the ultimate beneficiaries, and would render the last sentence of the next item of the will meaningless.

APPEAL by defendants Jean Morgan, Charles L. Morgan, Jr., Mary Claudia Hooker, and Frances Bond from *Sitton, Judge.* Judgment entered 17 December 1986 in Superior Court, CATAWBA County. Heard in the Court of Appeals 29 October 1987.

Plaintiffs Mary Louise Eldridge and her husband, Donald E. Eldridge, brought this declaratory judgment action seeking termination of certain trusts established by a Codicil to the Will of Claudia Field Allen and seeking distribution of the trust assets. Claudia Field Allen (hereinafter, testatrix) died on 12 August 1938, leaving a Will dated 2 August 1918 and a Codicil to that Will dated 12 January 1929. Both of these documents were admitted to Probate in Catawba County, North Carolina, on 3 October 1938. Items One, Two, and Three of the Codicil bequeathed specific sums of money in trust for the use of various individuals under specified conditions. Items Four and Five of the Codicil, the construction of which is here at issue, provided the following:

> ITEM 4: All the rest, residue and remainder of my property, both real and personal, I devise and bequeath to the Trustees hereinafter mentioned, for the use of my children, share and share alike, to invest and re-invest the same and the income therefrom to be paid to the said children in equal shares during their lives. Said Trustees shall have full power in their discretion to pay to any or all of said children at any time any part of the principal of said Trust fund as to the share or shares of such child or children, which shall be over and above the sum of $5,000.00; it being expressly provided hereby that said Trustees shall retain for the use and benefit of my children during their respective lives the minimum sum of $5,000.00 for each child. Upon the death of any of my children without children or their descendants surviving my said child or children, the interest and property devised and bequeathed by this Item 4 shall go to my surviving children in equal shares in trust, as is provided in this Item.

> ITEM 5: Upon the termination of the trusts created by this codicil, unless provision is otherwise herein expressly made, the respective trust funds shall go to the heirs of my said children.

Testatrix was survived by four children, Louise Allen, Frank Field Allen, Mary Allen May, and Katherine Allen Cornwell. Lou-

ise Allen died first, without children or descendants. Frank Field Allen died second, leaving three daughters, Jean Morgan, Mary Claudia Hooker, and Frances Bond, three of the defendants involved in this appeal. (The fourth defendant involved in this appeal is Charles L. Morgan, Jr., the husband of defendant Jean Morgan. Defendant First Union National Bank is not a part of this appeal.) Mary Allen May was the third of testatrix's children to die, and she left no children or descendants. Katherine Allen Cornwell was the last of testatrix's children to die; she was survived by one daughter, Mary Louise Cornwell Eldridge, one of the two plaintiffs in this case.

The court below concluded that Item Four of testatrix's Codicil established four separate trusts for testatrix's four children; that when one of testatrix's children died without children or descendants, his trust fund, interest and principal, was to be divided among the surviving children; that when one of the testatrix's children died with children or their descendants surviving him, his share passed to his heirs pursuant to Item Five of the Codicil; that the trusts established by Item Four have all terminated or are now terminable; and that defendants Jean Morgan, Mary Claudia Hooker, and Frances Bond are entitled to one-third of the total funds and plaintiff Mary Louise Cornwell Eldridge is entitled to two-thirds of the total funds. Defendants Jean Morgan, Charles L. Morgan, Mary Claudia Hooker, and Frances Bond appeal.

*Corne, Pitts, Corne and Grant, P.A., by Larry W. Pitts, for plaintiff-appellees.*

*Rudisill and Brackett, P.A., by J. Steven Brackett, Curtis R. Sharpe, Jr., and H. Kent Crowe, for defendant-appellants.*

PARKER, Judge.

The principal issue in this appeal is whether the trial court correctly ascertained the respective proportional interests of each beneficiary in the corpus of testatrix's testamentary trust. To a large extent, resolution of this issue depends on whether the court below correctly concluded that Item Four of the Codicil to testatrix's Will created four separate trusts, and not one trust in which testatrix's children held concurrent beneficial interests. If four separate trusts were created by Item Four of the Codicil, the

share of each child who died with children or their descendants surviving him would be payable, upon termination of the trust, to his heirs pursuant to Item Five of the Codicil. If, however, Item Four created only one trust, determination of the ultimate beneficiaries' shares would depend on the nature of the testatrix's children's interests in the trust *res* as well as the nature of the interests granted the children's heirs under Item Five of the Codicil.

Where the meaning of a will or any part thereof is the subject of controversy, the court has the prerogative of construing the provision in question and declaring its meaning. *Wachovia Bank v. Livengood*, 306 N.C. 550, 552, 294 S.E. 2d 319, 320 (1982); *Trust Co. v. Waddell*, 237 N.C. 342, 346, 75 S.E. 2d 151, 153 (1953). In interpreting a will, the Court must be guided by the intent of the testator. *Wing v. Trust Co.*, 301 N.C. 456, 462-463, 272 S.E. 2d 90, 95 (1980); *Trust Co. v. Bryant*, 258 N.C. 482, 484, 128 S.E. 2d 758, 760 (1963). The intent that controls must be gathered from the instrument in its entirety. *Bank v. Goode*, 298 N.C. 485, 489, 259 S.E. 2d 288, 291 (1979). Every word or phrase in the instrument has its purpose and should be given meaning, if possible, and harmonized with the rest; none should be silenced. *Id.* Where parts of the will are dissonant or create an ambiguity, the discord thus created must be resolved in light of the prevailing purpose of the entire instrument. *Id.*

The question of whether or not multiple trusts were established by Item Four of the Codicil to testatrix's Will cannot be answered "by simply marshalling plural references in the document against singular." *Bank v. Goode*, 298 N.C. at 490, 259 S.E. 2d at 292. However, any ambiguity may be resolved by giving purpose to and harmonizing the words and phrases of the Will as a whole. By the terms of Item Four of the Codicil, the trust income was to be paid to testatrix's children "in equal shares during their lives"; the trustees had discretion to pay out principal to each child only as to the share of each child; the trustees were constrained to retain in the trust fund $5,000.00 for each child during his life; and the entire share, both principal and interest, of a child dying without children or their descendants surviving him was to be divided among the surviving children in equal shares in trust. These provisions strongly suggest that testatrix's intent was to create four separate trusts, one for each of her four children.

Use of the word "trusts" and the phrase "respective trust funds" in Item Five of the Codicil bolsters this conclusion. Defendants Morgan, Hooker and Bond contend that these plurals refer to trusts created by Items One, Two, and Three of the Codicil. However, this contention is strongly undercut by the fact that each trust created by Items One, Two, and Three provides for its own termination and each contains either its own specific distribution scheme or "pours over" into the residuary provision of Item Four. Logically, therefore, the plurals, "trusts" and "respective trust funds," could only refer to the multiple trusts set up by Item Four of the Codicil. The fact that the corpus of the trust set up by Item Four of the Codicil was treated as a single trust fund is immaterial. As Justice (now Chief Justice) Exum has noted:

> Whether the assets of the several shares are in fact physically separated and independently invested is immaterial to the existence of separate trusts. An undivided interest in a larger corpus may constitute the *res* of a separate trust. . . . What is important is that the trustees have the legal capacity to manage the shares as separate trusts where needed.

*Bank v. Goode*, 298 N.C. at 491, 259 S.E. 2d at 292 n. 4 (citation omitted).

Defendants Morgan, Hooker and Bond, however, contend that Item Four of the Codicil created one trust in which the children of testatrix received concurrent equitable interests. This view is untenable for a number of reasons. First, such an interpretation would leave uncertainty as to the nature of these equitable estates, *i.e.*, whether joint tenancies with rights of survivorship or tenancies in common; as to the disposition of each child's share if that child died with children or their descendants surviving; and as to the distribution of shares to the ultimate beneficiaries, the heirs of testatrix's children, *i.e.*, whether per stirpes or per capita. Moreover, if, as defendants Morgan, Hooker and Bond contend, Item Five of the Codicil evidences testatrix's intent to divide the trust *res* per capita among the heirs of testatrix's children after the last of testatrix's children has died, the last sentence of Item Four, granting the share of any child dying without children or their descendants surviving him to testatrix's surviving children, would be meaningless.

In sum, Item Four of the Codicil to testatrix's Will created four trusts in favor of testatrix's four children. The *res* of each trust, or what the Codicil denotes as the "share" of each child, was an undivided one-fourth interest in the residue of testatrix's property, which share was not to drop below the minimum sum of $5,000.00 during the life of the *c'estui que.* On the death of Louise Allen, the first of testatrix's children to die, the three surviving children each received one-third of Louise Allen's share; each child then had an equitable interest in an undivided one-third of the residue of testatrix's estate. When Frank Field Allen died next, his trust terminated, and his one-third interest was thereupon distributable to his heirs, defendants Jean Morgan, Mary Claudia Hooker, and Frances Bond. On the death of Mary Allen May, the third of testatrix's children to die, Mary Allen May's one-third share went to the remaining surviving child of testatrix, Katherine Allen Cornwell. Upon Katherine Allen Cornwell's death, the last of the four trusts terminated, and plaintiff as the heir of Katherine Allen Cornwell became entitled to the remaining two-thirds undivided interest in the residue of testatrix's estate.

Having determined that the trial judge did not err in finding four separate trusts, we find no merit in defendants' remaining assignments of error relating to the trial judge's failure to find certain facts which would be inconsistent with four separate trusts. The construction placed on the Codicil gave effect to the testator's intent as manifest in the language from the four corners of the document.

Accordingly, for the above-stated reasons, the judgment of the trial court is

Affirmed.

Judges EAGLES and MARTIN concur.

Judge MARTIN concurred in this opinion prior to 31 December 1987.