It has been brought to the attention of the court since the filing of the principal opinion herein that the question of surcharging the accountant for failure to invest cash which came into its hands subsequent to the death of the life tenant on May 15th, 1944, had not been determined. As above noted, the life tenant died on May 15th, 1944. On that date the trustee had cash in the amount of $1,095.52 uninvested. This cash fund thereafter increased until at the date of the submission of the matter to this court it was approximately $137,000. Exceptants contend that the accountant is chargeable with interest on this sum because of its negligence and failure to properly invest, so that some income might be received by the estate.
As above set forth, the life tenant died on May 15th, 1944. As was disclosed by the testimony, thereafter there were numerous conferences held between the trust officer of the Liberty Title 
Trust Company and several Philadelphia counsel representing the remaindermen, and in some instances the remaindermen themselves. It was apparently then contemplated by all parties concerned that the questions involved could be disposed of in a reasonably expedient fashion, so that distribution could be made at an early date. As a matter of fact, counsel for the estate of Lillian W. Seidel apparently objected to further investment of the cash fund, since distribution would then have to be made in kind rather than in cash.
During the trial of this matter, on several occasions the accountant attempted to obtain a consent from the several interested parties to the investment of the cash, but was unable to obtain such voluntary consent. The Liberty Title Trust Company did thereafter, in June of 1946, make application to the Orphans Court for instructions concerning the investment of the cash then on hand. Such instructions were given.
It is to be noted that upon this application the exceptants, although they did not object, refused to affirmatively consent. All of the parties, not only the accountant but the exceptants as well, did not anticipate that the actual trial and final disposition *Page 634 
would extend over as protracted a period as was actually consumed. At a pre-trial conference, the maximum estimated time which would be required for the trial which could be agreed upon by all parties concerned was three days. The trial of the matter was commenced on July 10th, 1945, and continued on July 11th and 12th, 1945. On October 3d 1945, the final hearing was finally had, other hearings having been had in the interim. The actual days that this matter was litigated in court, including not only the trial of the primary issues and the argument on the admissibility of documentary evidence and incidental matters as well, was approximately 15 days. Thereafter, with the voluminous testimony to be digested and the resulting difficulty in preparing briefs, further time was consumed before the exceptants' formal briefs were filed. These briefs were finally filed with the court on May 15th, 1946. The preparation of reply briefs further consumed additional time, to the extent that the matter was not in final form to be considered by the Orphans Court until on or about May 19th, 1947. Thereafter occurred the appointment of the judge of the Orphans Court to the Chancery bench and the resulting transfer of this cause to the Court of Chancery in October, 1947.
It is quite apparent from the foregoing circumstances, including the approximation of time for trial, submission of the matter to the court, the attitude of some of the parties concerning the advisability of keeping the cash on hand liquid for distribution, that not only the accountant but the exceptants as well had never conceived that this litigation would be as lengthy and protracted as it actually was.
A fiduciary who has a reasonable expectation that he may be called upon on an early date to make distribution may, for a reasonable time, hold the cash uninvested for the purpose of making such distribution.
In Frey v. Adm'rs of Frey, 17 N.J. Eq. 71, the court said (at p. 72) as follows:
"An administrator may certainly, after the settlement of his accounts, retain the shares of those entitled to distribution in his hand for a reasonable time, where there is a probability that he will be called on for early payment. But the *Page 635 
indulgence will be jealously guarded and restricted within reasonable limits."
It is, of course, recognized that ordinarily it is the duty of the trustee to invest trust funds so that they may become productive of income. It is only when under circumstances where a failure of the trustee to invest trust funds may be deemed negligent that such trustee is held liable for interest on the cash so uninvested.
2 Scott on Trusts 966, states as follows:
"Ordinarily it is the duty of the trustee to invest trust funds so that they will be productive of income. The trustee can properly take a reasonable amount of time in looking out for proper trust investments, and is not liable for failure to make the property productive during such time. If, however, he delays for an unreasonable length of time before making investments, he commits a breach of trust. Whether his delay in making investments is unreasonable depends upon all the circumstances."
Restatement of the Law — Trusts, concerning the duty of the trustee to invest, states as follows (at p. 466):
"c. Money. In the case of money, it is normally the duty of the trustee to invest it so that it will produce an income. The trustee is liable if he fails to invest trust funds which it is his duty to invest for a period which is under all the circumstances unreasonably long (see sec. 211, Comment f). If, however, the delay is not unreasonable, he is not liable."
Under the circumstances here present, it cannot be said that the trustee was negligent in failing to invest the cash which came into its hands subsequent to the death of the life tenant.
Exceptants' prayer for a surcharge for accountant's failure to so invest is disallowed. *Page 636