Heinitsh v. Wachovia Bank, 2007 NCBC 19

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| | | SUPERIOR COURT DIVISION |
| COUNTY OF HENDERSON | | 04 CVS 734 |

| | | |
|---|---|---|
| BEULAH R. HEINITSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, NATIONAL | ) | ORDER ON MOTIONS FOR |
| ASSOCIATION f/k/a FIRST UNION | ) | SUMMARY JUDGMENT |
| NATIONAL BANK, N.A., AGNES H. | ) | |
| WILLCOX, JOHN S. HEINITSH, | ) | |
| ISABEL H. NICHOLS, and REGINALD | ) | |
| D. HEINITSH, JR., | ) | |
| | ) | |
| Defendants. | ) | |

{1}    This case arises out of Plaintiff's suit for declaratory judgment, breach of fiduciary duty, and unfair and deceptive trade practices against Defendants.  These matters come before the Court on cross motions for summary judgment.

{2}    After considering the briefs and oral arguments, the Court GRANTS Defendant Wachovia's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment on the grounds that the trustee acted reasonably and in good faith in addressing a dispute it did not create.

> *Smith Moore LLP by Larry B. Sitton and Manning A. Connors for Plaintiff Beulah R. Heinitsh.*

> *Bell, Davis & Pitt, P.A. by James R. Fox and Kevin G. Williams for Defendant Wachovia Bank, National Association f/k/a First Union National Bank, N.A.*

> *Adams Hendon Carson Crow & Saenger, P.A. by Martin K. Reidinger and Gregory S. Hilderbran for Defendants Agnes H. Willcox, John S. Heinitsh, and Isabel H. Nichols.*

Tennille, Judge.

## I.
## PROCEDURAL BACKGROUND

{3} This action was filed in Guilford County Superior Court on February 6, 2003. The case was designated as exceptional under Rule 2.1 of the General Rules of Practice and Procedure for the Superior and District Courts and assigned to the undersigned Special Superior Court Judge for Complex Business Cases by order of the Chief Justice of the Supreme Court of North Carolina dated October 14, 2003.

{4} Following a dispute and appeal on the issue of venue, the parties agreed to transfer venue of this matter to Henderson County and also agreed not to challenge the assignment of the case to the Business Court. (Consent Order, Apr. 28, 2004.)

{5} The disputes between Plaintiff and Defendants Willcox, John S. Heinitsh, Nichols, and Reginald D. Heinitsh, Jr. were compromised and approved by the Court in a Partial Consent Judgment dated June 13, 2005. Plaintiff and Defendant Wachovia filed cross motions for summary judgment on the issue of breach of fiduciary duty on February 28, 2006. The Court heard oral arguments on the motions on April 13, 2006. All other claims, counterclaims, and crossclaims between the parties have been resolved.

## II.
## FACTUAL BACKGROUND
### A.
### THE PARTIES

{6} Plaintiff Beulah R. Heinitsh is a resident of Transylvania County, North Carolina.

{7} Defendant Wachovia Bank, National Association f/k/a First Union National Bank, N.A. ("Wachovia") is a national banking association with its principal place of business in Mecklenburg County, North Carolina.

{8} Defendant Agnes H. Willcox is a resident of Transylvania County, North Carolina.

{9} Defendant John S. Heinitsh is a resident of Transylvania County, North Carolina.

{10} Defendant Isabel H. Nichols is a resident of Transylvania County, North Carolina.

{11} Defendant Reginald D. Heinitsh, Jr. ("Reg., Jr.") is a resident of Transylvania County, North Carolina.

{12} Plaintiff is the widow of Reginald D. Heinitsh, Sr. ("Reg., Sr.").

{13}   Defendants Willcox, John Heinitsh, Nichols, and Reg., Jr. ("the children") are the children of Reg., Sr. and Isabel Sloan Heinitsh ("Isabel").

{14}   Reg., Sr. and Isabel were married in 1941 and divorced on February 19, 1976.

{15}   Reg., Sr. and Plaintiff were married on March 13, 1976.  They remained married until Reg., Sr.'s death on September 27, 1992.

B.

THE 1987 AGREEMENT

{16}   In 1985, the children filed a lawsuit against their father in the District Court of Transylvania County.  Under a settlement agreement dated January 5, 1987 ("1987 Agreement"), the children agreed to dismiss the suit.  Reg., Sr. agreed to incur two obligations in return.  First, he agreed to create an irrevocable trust, funded with $900,000.  These funds were to be used for the benefit of Isabel and Reg., Sr. during their lives.  At their respective deaths, the funds were to be transferred to Isabel's estate.  Reg., Sr. also agreed to pay $100,000 to Defendant Willcox in her capacity as Isabel's guardian.  (Compl. ¶ 7.)

{17}   Second, Reg., Sr. entered into a contract to make a will.  He agreed that at least eighty percent of his residuary estate would pass to the children.  However, the contract also provided that Reg., Sr. could place all or part of the property that was to go to the children in trust.  The income would be paid to his surviving spouse, and the remainder would go to the children upon her death.  If the surviving spouse was Beulah Inman (now Plaintiff Beulah Heinitsh), then the trust could provide for the trustee in its discretion to invade the principal of the trust for  health, support, and maintenance of Beulah Heinitsh.   (Compl. ¶ 8.)

C.

THE WILL AND MARITAL TRUST

{18}   On January 6, 1987, Reg., Sr. executed a Last Will and Testament.  (Compl. ¶ 9.)  As contemplated by the 1987 Agreement, the Will directed that eighty percent of the residuary estate be distributed to a trust known as the Beulah R. Heinitsh Marital Trust ("Marital Trust").  (Compl. ¶ 10.)  Income was to be paid to Plaintiff during her life.  So long as Plaintiff remained unmarried following Reg., Sr.'s death, she was also eligible to receive distributions of principal as the trustee deemed necessary to provide for her health, support, and maintenance.  The children were to receive the remaining principal and income at Plaintiff's death.  (Compl. ¶ 11.)

{19}  The Will appointed Wachovia[1] to serve as both personal representative of Reg., Sr.'s estate and trustee of the Marital Trust.  (Compl. ¶ 13.)

{20}  Reg., Sr. died on September 27, 1992.  (Compl. ¶ 14.)

## D.

## THE 1996 SETTLEMENT AGREEMENT

{21}  During the administration of the estate of Reg., Sr., certain controversies arose regarding the valuation of Lake Toxaway Company ("LTC"), a real estate development company founded by Reg., Sr. in 1960.  (*See* Compl. ¶ 16.)  Controversies also arose regarding the actions of the officers and directors of LTC prior to Reg., Sr.'s death.  These controversies delayed the closing of Reg., Sr.'s estate and consequently the funding of the Marital Trust for a number of years.  (Compl. ¶ 18.)  In 1996, LTC, Plaintiff, and Reg., Jr. resolved these disputes and entered into a Settlement Agreement and Release ("1996 Settlement Agreement").  (Compl. ¶ 19.)  The 1996 Settlement Agreement allowed the estate to be closed and permitted funding of the Marital Trust.  (Def.'s Br. Supp. Mot. Summ. J. 4.)

{22}  With the closing of the estate, Wachovia was able to establish the Marital Trust as contemplated by Reg., Sr.'s will.  For tax reasons, Wachovia established two trusts—a Qualifying Terminable Interest Property trust and a Nonqualifying Terminable Interest Property trust (collectively "the Trusts").  (Statement of Stipulated Facts Between Pl. Beulah Heinitsh and Def. Wachovia Bank, N.A. ¶ 3, Feb. 13, 2006.)  As authorized by the will, the Trusts were created to hold eighty percent of the residuary of Reg., Sr.'s estate.  (Compl. ¶ 28.)  As part of this share in the residuary estate, the Trusts came into ownership of 2,975 shares of common stock of LTC, constituting 48.217% of the issued and outstanding stock of LTC.  (*See* Compl. ¶¶ 15, 29.)  Reg., Jr. was LTC's largest shareholder with 3,147 shares.  (Pooling Agreement 2.)  Together, the estate (and eventually the Trusts) and Reg., Jr. owned 99.2% of the outstanding stock of LTC.  (Settlement Agreement and Release, Dec. 31, 1996 1.)

{23}  Wachovia and Reg., Jr., as shareholders of LTC, executed a Pooling Agreement contemporaneously with and as a condition to the effectiveness of the 1996 Settlement Agreement.  (Compl. ¶ 20.)  Under the Pooling Agreement, Wachovia and Reg., Jr. agreed to

---

[1] The Will was executed prior to the 2001 merger of First Union Corporation and Wachovia Corporation, *see First Union Corp. v. SunTrust Banks, Inc.*, 2001 NCBC 9 (N.C. Super. Ct. Aug. 10, 2001), http://www.ncbusinesscourt.net/opinions/2001%20NCBC%2009A.pdf, and appointed First Union as personal representative and trustee.  For convenience and clarity, the Court refers to the trustee as "Wachovia" throughout this Order.

vote their shares to elect a majority of directors who would vote for a declaration of dividends by LTC according to a Dividend Policy which was attached to the Pooling Agreement. (Pooling Agreement 2.) The Dividend Policy provided as follows:

> LTC shall pay dividends each year, equal to: (i) the product of the combined highest federal and North Carolina income tax rates (currently 47.15%) and the Net Income before taxes of LTC and (ii) the Adjusted Net Excess Cash. Dividends under the Dividend Policy shall be paid for each fiscal year of LTC on or before March 31 of the following fiscal year without further action of the Board of Directors of LTC, and the first such dividend shall be paid on or before March 31, 1997, for LTC's 1996 fiscal year.

(Pooling Agreement Ex. A.) The LTC board of directors ultimately adopted the Dividend Policy. (Compl. ¶ 22.)

{24} Plaintiff entered into the 1996 Settlement Agreement "with the understanding and intent that the Dividend Policy would cause LTC to pay dividends each year to the Trusts, which dividends would be income to the Trusts and distributed to her as the sole income beneficiary of the Trusts." (Compl. ¶ 24.)

E.

THE PRESENT DISPUTE

{25} After the Settlement Agreement, Pooling Agreement, and Dividend Policy were in place, the parties entered a period of relative peace. LTC continued to realize ordinary income from the development and sale of real estate. This income was paid as dividends to the shareholders, including the Trusts. (Compl. ¶ 33.) Until 2002, Wachovia considered the LTC dividends to be trust income, and distributed them to Plaintiff as the sole income beneficiary of the Trusts. (Statement of Stipulated Facts ¶ 7.) In 2002, Wachovia noticed a change in LTC's business practices. Rather than selling developed land in the normal course of business, LTC appeared to be liquidating a substantial portion of its real estate assets, including undeveloped and unimproved tracts. LTC indicated to Wachovia "that it would thereafter operate primarily as a retail real estate brokerage business," (Zorigian Aff. ¶ 11), rather than a real estate development company. This change in business practices generated far more income than LTC had realized in years past or expected to earn in the future as a real estate developer. (Zorigian Aff. ¶ 12.) LTC characterized this income as capital gain, rather than ordinary income, on its 2001 financial statements and tax returns. (Zorigian Aff. ¶ 13.) LTC was, in effect, liquidating its real estate holdings. These events caused Wachovia to question whether the dividends the Trusts had been

receiving from LTC were properly characterized as income or principal. If the dividends consisted of proceeds from a partial liquidation of LTC, they should have been characterized as principal and left for the children as contingent remainder beneficiaries, rather than distributed to Plaintiff as the sole income beneficiary. To help resolve this question, Wachovia sought advice from legal and accounting professionals. (Zorigian Aff. ¶ 14.)

{26} As a result of these consultations, Wachovia concluded that "a significant part of the distributions from LTC to the trusts for tax year 2001, a lesser but material part of tax year 2000 and most of the distributions projection from 2002 and 2003 should be allocated to principal." (Zorigian Aff. ¶ 15.A.) Plaintiff took issue with this conclusion and a dispute arose between her and the children as to the proper characterization of the LTC dividends. (Zorigian Aff. ¶ 16.) Wachovia was caught in the middle. This dispute culminated in the filing of this action, in which Plaintiff contends that all distributions paid by LTC to the Trusts should be allocated to income and paid to her. (Compl. ¶¶ 53–54.) The Complaint also alleges breach of fiduciary duty and unfair and deceptive trade practices against Wachovia. (Compl. ¶¶ 57–70.) All parties, including Wachovia, asked the Court to declare whether the distributions were trust principal or trust income. The distributions paid by LTC to the Trusts for 2001 and 2002 total $6,886,491 (the "Disputed Funds"). (Statement of Stipulated Facts ¶ 9.) Wachovia paid Plaintiff $2,021,660 from the 2001 distribution and thus retained $4,864,831 of the Disputed Funds. The $4,864,831 is referred to as the "Retained Funds." (Statement of Stipulated Facts ¶ 10.) Wachovia placed the Retained Funds into a single money market fund. (Statement of Stipulated Facts ¶ 11.) On March 31, 2004, the Court entered an Order approving the investment of the Retained Funds as principal by Wachovia until this litigation was resolved. (Order, Mar. 31, 2004.)

F.

THE BENEFICIARIES' SETTLEMENT AGREEMENT AND ALLEGED DAMAGES

{27} On December 24, 2004, Plaintiff and the contingent remainder beneficiaries of the Trusts agreed to settle their differences over the Disputed Funds. They agreed on an amount that would be allocated to principal and an amount that would be allocated to income. On June 14, 2005, the Court entered a Partial Consent Judgment approving the terms of the beneficiaries' settlement. Plaintiff continues to seek damages against Wachovia for breach of fiduciary duty for investing the Retained Funds in a money market account during the pendency of the dispute.

She "contends that the Court may calculate damages by analyzing what the market value and income performance of the Retained Funds would have been had Wachovia invested the Retained Funds when it received them in the same investment mix as the Bank selected on April 14, 2004" when the Court ordered they be invested as principal until the case was resolved. (Statement of Stipulated Facts ¶ 19.) Thus, Plaintiff argues that damages should be calculated as if the Retained Funds had been invested as principal.

{28} The Retained Funds were invested at a low rate. The money market account where Wachovia placed the Retained Funds earned an estimated annual yield ranging from 0.720% to 1.580%. By comparison, the assets that were treated as principal were invested in a tax-exempt municipal bond fund, earning an estimated annual yield ranging from 4.565% to 5.208%. (Pl. Beulah R. Heinitsh's Statement of Claims Against Wachovia Bank, N.A. ¶ 9.)

III.

MOTIONS FOR SUMMARY JUDGMENT

A.

STANDARD OF REVIEW

{29} Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. 56(c). "It is not the purpose of the rule to resolve disputed material issues of fact but rather to determine if such issues exist." N.C. R. Civ. P. 56 cmt. The burden of showing a lack of triable issues of fact falls upon the moving party. *See, e.g.*, *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). Once this burden has been met, the nonmoving party must "produce a forecast of evidence demonstrating that [it] will be able to make out at least a prima facie case at trial." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). The Court must exercise caution in granting a motion for summary judgment. *N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 310, 230 S.E.2d 375, 379 (1976).

B.

RELEVANT TRUST LAW

{30} There is remarkably little guidance from trust law commentators or our appellate courts regarding situations such as this in which a trustee is faced with a dispute among beneficiaries over the proper characterization of funds. In the absence of specific authority, the Court must rely on general principles of fiduciary and trust law. It is clear that a "trustee under any trust" is a fiduciary. N.C. Gen. Stat. § 32-2 (2005). A fiduciary relationship "exists where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and in due regard to the one reposing confidence." *Moore v. Bryson*, 11 N.C. App. 260, 265, 181 S.E.2d 113, 116 (1971). The details of a trustee's fiduciary duty in investing property is defined by statute as follows:

> In acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property for the benefit of another, a fiduciary shall observe the standard of judgment and care under the circumstances then prevailing, which an ordinarily prudent person of discretion and intelligence, who is a fiduciary of the property of others, would observe as such fiduciary . . . .

N.C. Gen. Stat. § 32-71(a). More specifically, "[a] trustee shall invest and manage trust assets as a prudent investor would, by *considering the purposes, terms, distribution requirements, and other circumstances of the trust.*" *Id.* § 36C-9-902(a) (emphasis added). In carrying out these duties, "the trustee shall exercise reasonable care, skill, and caution." *Id.* The statute specifically authorizes the trustee to consider "[n]eeds for liquidity, regularity of income, and preservation or appreciation of capital" when making investment and management decisions. *Id.* § 36C-9-902(c)(7).

{31} As custodians of the property of others, trustees must be cautious and, to a certain extent, conservative in their approach to investing. The requirement of caution "requires the trustee to invest with a view both to safety of the capital and to securing a reasonable return." Restatement (Third) of Trusts § 227 cmt. e (1992). However, "the degree of conservatism required and thus the degree of risk permitted for a particular trust is ultimately a matter for interpretation and judgment." *Id.* The trustee must "make reasonable efforts to ascertain the purposes of the trust and to understand the types of investments suitable to those purposes in light of all the relevant circumstances." *Id.*

{32}   Although a trustee is generally obligated to diversify investments and endeavor to secure a reasonable return, the trustee must also consider the specific facts and circumstances before it.  Trusts "differ considerably in their risk-bearing capacities," and "[i]f a trust cannot tolerate adverse outcomes in the short run, the trustee should not adopt a high risk-reward strategy."  *Id.*  An example of when a trust would not be able to tolerate short-run adversity would be when there is a dispute as to the proper characterization of funds.  In that situation, additional caution is warranted.  One treatise notes as follows:

> Occasionally the trustee has good reason for holding the trust property in an unproductive condition and he will not be liable to pay to the beneficiary for either interest or the value of the use measured in any other way.  Thus where the money is held under a mistake of law, or where the money is held during a period when there is no duty to pay over or invest, or where the trustee has in good faith paid the money to the wrong party under a mistake of law, or where the trustee is holding the money to await the determination of conflicting claims to it, or there is no unreasonable delay in applying the trust money and no use of it by the trustee for his own purposes . . . there may be no liability to pay interest.

George Gleason Bogert et al., *The Law of Trusts and Trustees* § 863 (2d rev. ed. 1978).  A good example of this principle in action is found in the New Jersey case of *Liberty Title & Trust Co. v. Plews*, 61 A.2d 297 (N.J. Ch. 1948), *modified on other grounds*, 70 A.2d 784 (N.J. Super. Ct. App. Div. 1950), *aff'd in part and rev'd in part on other grounds*, 77 A.2d 219 (N.J. 1950).  In *Plews*, the trustee did not invest funds which came into his possession after the death of the trust's life tenant.  *Id.* at 297.  After the life tenant died, all parties were of the opinion that the disputed issues could be resolved quickly and that a distribution could be made sooner rather than later.  *Id.*  Ultimately the case took much longer to resolve than the parties contemplated.  *Id.* at 298.  However, the court found that the trustee was not negligent in his decision to keep "the cash on hand liquid for distribution."  *Id.*  The court held that "[a] fiduciary who has a reasonable expectation that he may be called upon on an early date to make distribution may, for a reasonable time, hold the cash uninvested for the purpose of making such distribution."  *Id.*  The trustee reasonably believed it would be called on to distribute the cash in the immediate future, and appropriately and in good faith planned for that event.  "It is only when under circumstances where a failure of the trustee to invest trust funds may be deemed negligent that such trustee is held liable . . . ."  *Id.*

{33} The trustee's good faith in the commission of its duties is an important consideration for North Carolina courts in reviewing the trustee's actions. In *Carter v. Young*, 193 N.C. 678, 137 S.E. 875 (1927), the Supreme Court of North Carolina stated the following:

> When it appears that a trustee has exercised, or proposes to exercise, such discretion in good faith, and with an honest purpose to effectuate the trust, the courts will not undertake to supervise or control his actions. They will not undertake to set aside or over-ride his judgment in matters clearly committed to his discretion, and to substitute therefor the judgment of others, or their own judgment, upon the sole allegation that the action of the trustee is not wise or just.

*Id.* at 681–82, 137 S.E. at 877. Accordingly this Court will not overturn the actions of a trustee acting in good faith to carry out the intentions of the grantor.

## C.

## ANALYSIS

{34} As trustee of the Marital Trusts, Wachovia stood in a fiduciary relationship to both Plaintiff as income beneficiary and the children as remainder beneficiaries. *See* N.C. Gen. Stat. § 32-2. In dealing with trust funds, Wachovia was therefore subject to the rules described above. The Court must determine if there is a genuine issue of material fact over whether Wachovia ran afoul of these rules. Given the facts of this case, the Court concludes that no genuine issue of material fact exists.

{35} As noted above, the law requires trustees to be cautious and consider all the relevant circumstances in making investment decisions. The evidence here shows that Wachovia made its decision to place the Retained Funds in a money market account after careful consideration of a number of circumstances unique to this trust. When a dispute arose between the income and remainder beneficiaries, Wachovia wisely saw the need to be especially cautious in light of the Heinitsh family's history of litigation. These parties had taken their disputes to the courts on several prior occasions, and it was reasonable to conclude that this matter might ultimately be the subject of litigation. The children filed a lawsuit against their father, Reg., Sr., in 1985, resulting in the contract to make a will and the contemplation of the Trusts. Controversies arose during the administration of Reg., Sr.'s estate, leading to the 1996 Settlement Agreement. And predictably, a legal controversy arose regarding trust distributions, resulting in the filing of this action. Historically, the various factions of the family ultimately settled their disputes.

{36} When a dispute arose as to the proper characterization of the LTC dividends, Wachovia considered this history of conflict and settlement. If it characterized the funds as income, it was likely to be sued by the remainder beneficiaries. If it characterized the funds as principal, it was likely to be sued by the income beneficiary. On the horns of this dilemma, the trustee placed the funds in a money market account and urged the parties to settle the dispute.

{37} Wachovia's decision to keep the funds in a money market account during the time it was attempting to broker a compromise was reasonable under the circumstances. Although the parties had a history of conflict, Wachovia hoped to resolve the matter and distribute the funds accordingly. Even after this action was commenced, the parties consented to stay the litigation in the hopes of resolving the matter through a mediated settlement conference. The mediator did not declare an impasse until July 1, 2003. Based on these good faith settlement discussions, Wachovia planned for the possibility that the funds would have to be distributed quickly. Such a possibility required that the funds be kept liquid, which Wachovia accomplished through the money market investment. Had Wachovia invested the Disputed Funds as principal and without regard for liquidity, the funds would not have been readily available for distribution in the event of a settlement, thus exposing the trustee to liability on yet another front.

{38} Wachovia was well within its discretion to consider a potential settlement and the resulting need for liquidity in its decision to keep the Retained Funds in a money market account. The relevant statute explicitly authorizes trustees to consider "[n]eeds for liquidity" in managing trust assets. N.C. Gen. Stat. § 36C-9-902(c)(7). There is also authority in the commentary and from another jurisdiction indicating that it is proper for trustees faced with conflicting claims to funds to keep the funds as liquid as possible. *See Plews*, 61 A.2d at 298; Bogert, *supra*, § 863. In *Plews*, the trustee was faced with a dispute between beneficiaries and expected a quick resolution. *Id.* at 297. The dispute took longer than anticipated to resolve. *Id.* at 298. Nevertheless, the court held that the trustee was not liable for holding the funds uninvested for the sake of liquidity. *Id.* at 299. Wachovia was faced with a similar situation here. There was a dispute between beneficiaries, and a settlement could have come at any time, whether as a result of informal discussions between the parties or the mediated settlement conference convened after the filing of the complaint. Like the trustee in *Plews*, the trustee here had "a reasonable expectation that he may be called upon on an early date to make [a] distribution." *Id.* at 298. Barring negligence or bad faith, a trustee will not be held liable in these circumstances.

{39} There is no genuine issue of material fact on the issue of Wachovia's good faith in taking the actions described above. Wachovia's rationale in carrying out its duties is found in the affidavit of William Edmond Zorigian, the trust officer responsible for the Heinitsh Trusts. According to Mr. Zorigian,

> Wachovia's primary concern was making sure that the Retained Funds did not decline in value. Therefore, instead of investing the Retained Funds in any asset that potentially fluctuated in value, the Retained Funds were invested in a money market account . . . . In my opinion, prior to this Court's Order of March 31, 2004, which allowed Wachovia to invest the Retained Funds as trust corpus, it would have been imprudent to invest the Retained Funds in any asset that was subject to market fluctuations, including fixed income securities.

(Zorigian Aff. ¶¶ 19, 22.) Plaintiff has offered no evidence to indicate that Wachovia was not acting in good faith or was negligent in its duty to properly balance the interests of the income and remainder beneficiaries other than the low return on the funds. On the contrary, Wachovia's actions with regard to the Retained Funds were fair to all parties. By placing the Retained Funds in a money market account, there was no risk that they would become the victim of a downturn in the market. The Retained Funds were also liquid enough to be readily available for possible distribution to the income beneficiary.

{40} The Court also notes Plaintiff's inconsistent position with respect to these funds. This lawsuit arose because Plaintiff and the children had a disagreement over whether the funds were to be characterized as trust income or trust principal. It is Plaintiff's position that these funds were income and that Wachovia should have paid the funds to her without delay. However, Plaintiff also argues to this Court that it was improper for Wachovia to invest the funds in a money market account and that the trustee should have invested the funds as it would have invested trust principal.

{41} Wachovia considered the funds to be in dispute. As Mr. Zorigian indicated in his affidavit, "[b]ecause of the ongoing dispute between Beulah Heinitsh and the Remainder Beneficiaries as to whether the retained Funds were principal or income . . . Wachovia did not consider the Retained Funds to be trust corpus. Accordingly, absent intervention from the Court or consent from all of the beneficiaries, until the dispute was resolved, it would not have been appropriate to invest the Retained Funds as trust corpus." (Zorigian Aff. ¶ 19.) Wachovia was faced with the following situation: Plaintiff was arguing that the Funds were income. The children were arguing that the funds were principal. For Wachovia to ignore Plaintiff and invest

the funds as principal would have been an odd solution indeed. Wachovia was protecting the interests of both income and remainder beneficiaries.

{42} It is the trustee's job to make these types of decisions and carefully balance the interests of the income and remainder beneficiaries. Wachovia acted reasonably and in good faith, and the Court does not find its decisions to be negligent, improper, or a breach of fiduciary duty. To do so would discourage persons and institutions from serving as trustees. Trustees, institutional or otherwise, are sometimes caught in the middle of disputes between beneficiaries. In these situations, the law directs trustees to use caution, consider all the surrounding circumstances, and carefully balance the interests of both income and remainder beneficiaries. Wachovia did not cause the dispute in this case. When the dispute arose, the trustee acted conservatively and in good faith. There is no genuine issue of material fact as to whether these actions were in breach of the trustee's fiduciary duties to Plaintiff.

IV.

CONCLUSION

{43} Based on the foregoing, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant Wachovia's Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED, this the 11th day of June, 2007.