BEULAH R. HEINITSH, Plaintiff v. WACHOVIA BANK, NATIONAL ASSOCIATION f/k/a FIRST UNION NATIONAL BANK, N.A., AGNES H. WILLCOX, JOHN S. HEINITSH, ISABEL H. NICHOLS, and REGINALD D. HEINITSH, JR., Defendants

No. COA07-1198

(Filed 2 September 2008)

**Trusts— fiduciary duty—pending litigation—holding funds in money market**

The trial court correctly granted summary judgment for defendant in an action against a trustee for holding trust funds in a money market account during litigation. Defendant was not faced with deciding how to invest the retained funds, but with deciding whether the retained funds should be dispersed as income or invested as principal. Litigation ensued after plaintiff objected to the funds being characterized as principal, and defendant focused on keeping the retained funds in a liquid investment vehicle and preventing any dimunition of the funds.

Appeal by plaintiff from order entered 14 July 2007 by Judge Ben F. Tennille in Henderson County Superior Court. Heard in the Court of Appeals 1 April 2008.

*Smith Moore LLP, by Larry B. Sitton and Manning A. Connors, for plaintiff-appellant.*

*Bell, Davis, and Pitt, P.A., by William K. Davis and Kevin G. Williams, for defendant-appellee.*

BRYANT, Judge.

Beulah R. Heinitsh (plaintiff) appeals from an order denying her motion for summary judgment and granting summary judgment in favor of Wachovia Bank, National Association f/k/a First Union National Bank, N.A. (defendant). We affirm.

*Facts and Procedural History*

Reginald Heinitsh, Sr. (Mr. Heinitsh) executed a will creating a testamentary trust (the Trust) and designating plaintiff as the income beneficiary and Mr. Heinitsh's four adult children—Agnes H. Willcox, Reginald D. Heinitsh, Jr., John S. Heinitsh and Isabel H. Nichols—as the contingent remainder beneficiaries (the remainder beneficiaries). After Mr. Heinitsh's death on 27 September 1992, controversies arose between plaintiff and the remainder beneficiaries. Pursuant to a settlement and release agreement executed by plaintiff and Reginald D. Heinitsh, Jr., Mr. Heinitsh's estate was closed and the Trust was funded with eighty percent (80%) of Mr. Heinitsh's residual estate as directed by his will. The remaining twenty percent (20%) of his estate was paid directly to plaintiff.

Mr. Heinitsh's will appointed defendant as trustee for the Trust. Mr. Heinitsh's will also provided that the net income of the Trust was to be paid directly to plaintiff. The relevant portions of Mr. Heinitsh's will are as follows:

9.06 (h)(4) In the exercise of its discretion, my trustee is directed to maximize the income of the Trust, by allocating, wherever possible, receipts, income, and gains to income, and by allocating payments, expenses, and losses to principal.

. . .

9.12 TRUSTEE'S INVESTMENT OBJECTIVES: In the administration of the [Trust], the trustee is directed to maximize the income of the Trust, notwithstanding a lack of growth in the principal thereof. It shall be the duty of the Trustee to maximize the benefit under such Trust available to my wife, and the Trustee shall subordinate growth and protection of principal to such objective. It is my understanding that an increased risk of diminution in principal may result from such investment objectives.

The principal asset of the Trust was an approximately 48% interest in the issued and outstanding shares of Lake Toxaway Company (LTC), a company Mr. Heinitsh formed in 1960 as a real estate devel-

opment company in Lake Toxaway, Translyvania County, North Carolina. Each year, LTC paid a portion of its net income to its shareholders, including defendant as trustee of the Trust. Defendant would then disperse the dividends from LTC to plaintiff as income from the Trust.

In 2002, defendant discovered that LTC began liquidating the majority of its real estate inventory during 2001 without notice to defendant. LTC informed defendant that it would no longer operate as a real estate development company but as a retail real estate broker-age business. Because of its structural change, LTC generated capital gains income that far exceeded historical or projected income. After seeking advice from legal and accounting professionals, defendant concluded that portions of the distributions from LTC to the Trust for tax years 2000 and 2001, as well as most of the projected distributions for tax years 2002 and 2003, should be allocated to principal. Due to defendant's conclusions, a dispute regarding classification of the dis-tributions for tax years 2000 through 2003 arose between plaintiff and the remainder beneficiaries. Plaintiff contended that the distrib-utions were income; the remainder beneficiaries contended the dis-tributions were principal.

The amount of the distributions paid by LTC to the Trust for tax years 2001 and 2002 totaled $6,886,491.00 (the disputed funds). Defendant paid plaintiff $2,021,660.00 from the 2001 distributions and retained $4,864,831.00 (the retained funds). On 6 February 2003, plaintiff filed an action against defendant and the remainder benefi-ciaries seeking a declaratory judgment that the disputed funds be classified as income. Plaintiff also alleged defendant breached its fiduciary duties by, among other things, failing to invest the retained funds in a more productive income producing asset. During the time the classification of the funds was disputed, defendant placed the retained funds into a single money market fund.

On 30 January 2004, plaintiff filed a motion to enforce the trust provisions and compel defendant to maximize the income from the retained funds. On 30 March 2004, plaintiff's motion to maximize the income from the retained funds was granted and defendant was ordered to invest the disputed funds as principal pending the out-come of the litigation. Defendant complied with the court order on 14 April 2004.

On 24 December 2004, plaintiff and the remainder beneficiaries reached a settlement agreement. The agreement provided that all but

$2,000,000.00 of the disputed funds should be treated as income for trust accounting purposes and paid to plaintiff. A partial consent judgment approving of the parties' settlement agreement was entered on 20 June 2005. Plaintiff's breach of fiduciary duty claim against defendant was still pending.

On 28 February 2006, plaintiff and defendant filed motions for summary judgment on the remaining breach of fiduciary duty claim. On 14 June 2007, the trial court granted defendant's motion for summary judgment and denied plaintiff's motion. Plaintiff appeals.

---

The main issue on appeal is whether the trial court erred by concluding there was no genuine issue of material fact regarding plaintiff's claim that defendant breached its fiduciary duty by investing the retained funds in a money market fund.

## Standard of Review

The standard of review on appeal from a summary judgment order is *de novo. Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). The question is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. *Gattis v. Scotland County Bd. of Educ.*, 173 N.C. App. 638, 639, 622 S.E.2d 630, 631 (2005) (citation omitted).

## Fiduciary Duties

The trustee of an irrevocable testamentary trust is a fiduciary. N.C. Gen. Stat. § 32-2 (2007) ("fiduciary" includes a trustee under any trust); *see also In Re Testamentary Tr. of Charnock*, 158 N.C. App. 35, 41, 579 S.E.2d 887, 891 (2003). As a fiduciary, the trustee is required by statute to "observe the standard of judgment and care under the circumstances then prevailing, which an ordinarily prudent person of discretion and intelligence, who is a fiduciary of the property of others, would observe as such fiduciary[.]" N.C. Gen. Stat. § 32-71 (2007). More specifically, "[a] trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust." N.C. Gen. Stat. § 36C-9-902(a) (2007). Indeed, this statutory standard aligns with the fundamental rule that courts must give effect to the intent of the testator or settlor when interpreting trust instruments. *Wachovia Bank of North Carolina, N.A. v. Willis*, 118 N.C. App. 144, 147, 454 S.E.2d 293, 295 (1995). A trustee may consider needs for liquidity, regularity of income, and preservation or appreci-

ation of capital in investing and managing trust assets. N.C. Gen. Stat. § 36C-9-902(c)(7) (2007). However, "the trustee shall exercise reasonable care, skill, and caution." N.C.G.S. § 36C-9-902(a).

In exercising reasonable care, a trustee must use "sound judgment and prudence, and in the discharge of his or her duties, he or she must exercise due diligence . . . ." 90A C.J.S. Trusts § 323 (2002). If the acts of a trustee are questioned, "the court must look at the facts as they existed at the time of their occurrence" and "the acts of the trustee must be judged in light of the circumstances affecting his or her action." *Id.* Courts will defer to a trustee's judgment when it is shown that the trustee has been faithful and diligent. *Id.*

As noted by the trial court, there is surprisingly little guidance regarding situations such as the one before us. Looking to general principles of the law of trusts for guidance, our research has revealed the law of trusts allows trustees to retain funds during pending litigation. *See* 90A C.J.S. Trusts § 515 (2002) (A trustee is not chargeable with interest where funds are retained without using them during a contest between rival claimants, or until the court determines to whom the money is to be paid.); *see also Id.* § 482 ("A trustee who has a reasonable expectation that he or she may be called on to make a distribution at an early date may hold cash uninvested for a reasonable time for the purpose of making such distributions."); Bogert, *The Law of Trusts and Trustees*, § 863 (Rev. 2d ed.) ("Occasionally the trustee has a good reason for holding the trust property in an unproductive condition and he will not be liable to pay to the beneficiary either interest or the value of the use measured in any other way. . . . [W]here the trustee is holding the money to await the determination of conflicting claims to it, . . . there may be no liability to pay interest.").

A similar situation to the case before us was addressed in *Liberty Title & Trust Co. v. Plews*, 61 A.2d 297 (N.J. Ch. 1948), *modified on other grounds*, 70 A.2d 784 (N.J. Super. Ct. App. Div. 1950), *aff'd in part and rev'd in part on other grounds*, 77 A.2d 219 (N.J. 1950). In *Plews*, a trustee retained funds received after the death of the life tenant of a trust. *Id.* The parties assumed a distribution could be made rather quickly. *Id.* However, after litigation consumed more time than originally anticipated, the beneficiaries attempted to collect interest from the trustee for failing to invest the funds. *Id.* at 298. The court, in denying the beneficiaries request, stated "[a] fiduciary who has a reasonable expectation that he may be called upon at an early date to make distribution may, for a reasonable time, hold

the cash he has in hand uninvested for the purpose of making such distribution." *Id.*

## I

Plaintiff argues defendant's duties under the will required it to maximize the income in favor of plaintiff, and defendant breached its duties by investing the retained funds in a money market ·fund because the fund produced a low rate of return.

We are not persuaded that defendant breached its fiduciary duty by investing the retained funds in a money market account while awaiting the resolution of the parties' litigation. We agree with plaintiff that the specific objectives of the will required defendant to make investment decisions that would benefit plaintiff, even if the very same decisions would result in a diminution of the principal. However, we do not agree that this mandate applied to the situation at hand.

Here, defendant was not faced with a decision regarding how to invest the retained funds. Rather, defendant was faced with deciding whether the retained funds should be dispersed to the plaintiff as income or whether the retained funds should be invested as principal. Because defendant, in the course of carrying out its trustee duties, discovered that a significant amount of LTC's assets were liquidated, it was required to inform plaintiff and the remainder beneficiaries of its discovery and its chosen course of action. Had plaintiff not objected to defendant's characterization of the funds, defendant would have invested the funds in a manner consistent with the trust principal and the will's mandate. However, plaintiff objected to the funds being characterized as principal and litigation ensued. Here, as in *Plews*, defendant was faced with the possibility that the litigation could be short-lived. Defendant focused on keeping the retained funds in a liquid investment vehicle and preventing any dimunition of the funds. In doing so, defendant chose to invest the funds in a liquid and virtually risk-free money market account.

In this case, defendant demonstrated reasonable care by taking precautionary steps to protect the retained funds and investing the funds in a liquid and risk-free money market account until the pending litigation was resolved.[1] Holding the retained funds during the

1. As an aside, plaintiff also argues defendant attempted to abdicate its fiduciary obligations by submitting a letter to the parties seeking indemnification for any diminution in the retained funds if invested in other investment vehicles. However, a trustee may seek release from the beneficiaries for acts performed that may be a breach of the trust agreement. *See* 90A C.J.S. Trusts § 329 (2002).

pending litigation was reasonable in light of the circumstances and defendant did not breach its fiduciary duty to plaintiff. We note, however, while we recognize that *Plews* suggests a fiduciary may hold the funds during a pending litigation, the better practice may be to interplead the funds during the pendency of the litigation.[2]

Viewing the evidence in the light most favorable to the non-moving party, we conclude no genuine issue of material fact exists regarding whether defendant breached its fiduciary duty. Therefore, the order of the trial court is affirmed. This assignment of error is overruled.

Because of our holding, we need not address plaintiff's remaining assignments of error.

AFFIRMED.

Judges WYNN and JACKSON concur.

—————

2. We note defendant suggested interpleading the funds in a letter to the parties dated 29 July 2003.