WACHOVIA BANK OF NORTH CAROLINA, N.A., TRUSTEE, Plaintiff v. SARA ANNE HANES WILLIS, MILDRED WILLIS PADEN, ELIZABETH WILLIS CROCKETT, ROSALIND SHEPPARD WILLIS, ROBERT MEADE WILLIS, ELIZABETH RAINS PADEN, a Minor, ANNE MEADE PADEN, a Minor, MARY CLAUDIA PADEN, a Minor, BENJAMIN ROBERT PADEN, a Minor, MILDRED MARCH CROCKETT, a Minor, CHARLES LUCIAN CROCKETT, IV, a Minor, ALBIONA KAI MALIE WILLIS, a Minor, TAI WILLIS OLSON, a Minor, LEIF HANS OLSON, a Minor, MEADE HANES WILLIS, a Minor, MARY KATHERINE WILLIS, a Minor, ROBERT RUTHERFORD WILLIS, a Minor, AND ALL OTHER UNBORN POTENTIAL LINEAL DESCENDANTS OF SARA ANNE HANES WILLIS, Defendants

No. 9421SC252

(Filed 7 March 1995)

## Trusts and Trustees § 85 (NCI4th)— meaning of beneficiary's "issue"—trial court's interpretation correct

The trial court properly determined that a trust beneficiary's "issue," as used in the distributive provisions of the trust instrument, were the children of the beneficiary who were living at the time of her death and the then living issue of any deceased child, *per stirpes*, since this interpretation is consistent with the intent of the settlor as reflected by the entire trust instrument and the circumstances surrounding its execution.

**Am Jur 2d, Trusts §§ 614 et seq.**

Appeal by the minor and unborn defendants from judgment entered 21 December 1993 by Judge William H. Freeman in Forsyth County Superior Court. Heard in the Court of Appeals 25 October 1994.

**WACHOVIA BANK v. WILLIS**

[118 N.C. App. 144 (1995)]

*Petree Stockton, L.L.P., by J. Robert Elster, and Rodrick J. Enns, for plaintiff-appellee.*

*Smith & Murphrey, by W. Everette Murphrey, IV, for defendant-appellants.*

*Womble Carlyle Sandridge & Rice, by Dewey W. Wells, and George A. Ragland, for defendant-appellee Sara Anne Hanes Willis.*

MARTIN, John C., Judge.

Plaintiff, as trustee, brought this declaratory judgment action seeking judicial interpretation of an irrevocable Living Trust Agreement executed by Robert M. Hanes on 16 March 1928 for the benefit of his daughter Sara Anne Hanes (Willis), who was then five years of age. The trust provided that the net income from the trust was to be applied for Sara's benefit until she attained twenty-one years of age, at which time the trustee was directed to distribute the income directly to Sara. Upon Sara's attaining the age of twenty-five, the trustee was directed to pay over the entire trust estate to her. The trustee was authorized, however, to withhold both the direct distribution of income and principal if, in its "sound judgment and sole discretion", pursuant to guidelines contained in the trust instrument, it was in Sara's best interests for the trust to continue. Exercising such discretion, the trustee did not distribute the trust's income to Sara until 1983, and has made no distribution of the principal. Sara Anne Hanes Willis is living; according to the allegations of the complaint, the trustee does not anticipate a termination of the trust during her lifetime.

The trust instrument provided for distribution of the trust estate upon the death of Sara Anne Hanes Willis as follows:

(4) If the said Sara Anne Hanes shall die before receiving this trust estate leaving issue surviving, then and in that event the Trustee shall continue to hold the same in trust and pay or apply the income therefrom to or for the benefit of her issue until the youngest of such issue shall attain the age of twenty-one years, and then distribute said trust estate, principal and any accumulation, to or among such issue, in equal shares.

(5) If the said Sara Anne Hanes shall die before receiving this trust estate without leaving issue surviving to take the same as above provided, then and in that event, upon the death of Sara

Anne Hanes and the failure of such issue, the Trustee is directed to close the trust by paying over and delivering said trust estate to Mrs. Mildred B. Hanes, mother of Sara Anne Hanes, if she then survive, or if Mrs. Mildred B. Hanes be deceased, then the same shall be paid over and delivered to Wachovia Bank and Trust Company, Trustee for Frank Borden Hanes, under the provisions of a certain trust agreement made by the Grantor herein for the benefit of Frank Borden Hanes, dated March 16, 1928; provided, however, if any other child or children of the Grantor should then be living, or dead leaving issue surviving, the property and estate herein described and set up as a trust fund shall be held by the said Trustee and administered for the equal benefit of all the Grantor's children and distributed equally to them in accordance with the terms of any trust agreement made by the Grantor for them, and designated to receive this fund; and if no such trust agreement has been made for the benefit of any one or more of said children, then the distributive provisions of this trust agreement shall apply to the further administration and settlement of the said trust for and amongst all of the children of the said Grantor. But if neither Mrs. Mildred B. Hanes nor Frank Borden Hanes, nor other child of the Grantor or issue thereof shall then be living, the Trustee shall close the trust herein created by distributing all of the then property and assets of said trust estate to or among the heirs-at-law and next of kin of the said Sara Anne Hanes, who shall be of the blood of the Grantor's ancestors, according to the laws of intestacy now obtaining in the State of North Carolina.

Plaintiff sought judicial interpretation of the words "her issue" and "such issue" as used in Paragraph Four of the distributive provisions of the trust instrument recited above. Sara Anne Hanes Willis and her four adult children answered, joining in the prayer for a declaratory judgment. Upon motion of Sara Anne Hanes Willis, a guardian *ad litem* was appointed to represent the minor defendants, her grandchildren, and unborn persons whose interests could be determined in the action. The guardian *ad litem* answered, alleging that Robert Hanes had intended the word "issue" to mean all lineal descendants of Sara who are alive at the time of her death.

The trial court found the facts to be essentially as summarized above, and concluded that although the use of the words "her issue" and "such issue" were susceptible to a number of different interpretations, those terms as used in Paragraph Four of the trust instrument

meant that, upon the death of Sara Anne Hanes Willis, any remaining trust assets should be divided "into as many equal shares as shall be necessary to allocate one such share to each then living child of Sara Anne Hanes (Willis), and one such share to the issue of any then deceased child of hers with issue then surviving, per stirpes . . . ." The trial court entered its judgment accordingly and the guardian *ad litem* gave notice of appeal.

As recognized by plaintiff in seeking declaratory relief, and by the trial court in its judgment, Robert Hanes' use of the words "issue", "her issue", and "such issue", in Paragraph Four of the distributive provisions of the trust instrument is susceptible to differing interpretations. The words could include an indefinite line of lineal descendants of Sara Anne Hanes Willis, an interpretation which none of the parties urge, as it may void the trust for violation of the rule against perpetuities. The words could mean that the trust assets were to be distributed *per capita* to the lineal descendants of Sara Anne Hanes Willis who are living at the time of her death, which could result in a disproportionate distribution among the families of Sara's four children. This is the interpretation for which appellants contend. Finally, the words could have the meaning accorded them by the trial court, i.e., that the trust assets were to be distributed among the children of Sara Anne Hanes Willis who are living at the time of her death, and the then living issue of any deceased child, *per stirpes.*

It is a fundamental rule that, when interpreting wills and trust instruments, courts must give effect to the intent of the testator or settlor, so long as such intent does not conflict with the demands of law and public policy. *Bank v. Goode*, 298 N.C. 485, 259 S.E.2d 288 (1979). The intent which controls is that which is found by examining the entire instrument, giving each word and phrase a meaning that, wherever possible, agrees with or accommodates the other. *Id.*

The word "issue" is usually construed to mean more than children; its generally accepted meaning is "an indefinite succession of lineal descendants . . . ." *Edmondson v. Leigh*, 189 N.C. 196, 201, 126 S.E. 497, 499 (1925). But, when "issue" is used in a will or trust instrument, it is subject to the rule of construction that the intent of the testator or settlor, as ascertained from the document, is to be given effect rather than the technical meaning of the words which he used. *Id.* Thus, when the word "issue" is used in a will or trust agreement and is unexplained by the context, it may mean lineal descendants, but where other provisions in the instrument and the surrounding

facts evidence that the testator or settlor intended the word "issue" to be synonymous with the word "children" and be more limiting, that latter construction should govern. *Poindexter v. Trust Co.*, 258 N.C. 371, 128 S.E.2d 867 (1963); *Edmondson v. Leigh, supra*; *Etheridge v. Realty Co.*, 179 N.C. 407, 102 S.E. 609 (1920).

In *Etheridge v. Realty Co., supra*, the testator made a devise of land: "To have and to hold unto the said Maud S. during her natural life, and after her death to her issue and their heirs." Maud S. had two children, both of whom were born before the death of the testator. In addition, one of her children had two minor children. Maud S. and her two children conveyed to the plaintiff the land described in the devise. The plaintiff thereafter contracted to convey said land to the defendant. The question before the Court was whether the plaintiff had good title to convey the land, assuming that Maud S., who was 65 years old at the time of the action, would have no other children. Resolution of the question depended upon a determination of whether the words "her issue" in the devise meant "her children" or "her lineal descendants." *Id.* at 407-08, 102 S.E. at 609.

While recognizing that the word "issue", "when used in a will and unexplained by the context, may. mean descendants . . .", the *Etheridge* Court held that where other portions of the will indicated an intent on the testator's part to use "issue" synonymously with "children", such an intent would be given effect. *Id.* at 408, 102 S.E. at 609. Thus, the Court concluded that "her issue" meant the "children of Maud S." and, therefore, the deed made by them conveyed good title to the property. *Id.*

The Supreme Court applied a similar analysis in *Poindexter v. Trust Co., supra*. In *Poindexter*, the testatrix devised her property to be held in trust for her son, with the net income being distributed to him. The will provided further that if her son died "leaving issue," then his issue were to receive the income, but if he left no issue, then the trust property was to be divided between her surviving brothers and sisters. Her son brought suit asserting, *inter alia*, that the word "issue" meant a "perpetual succession of [his] lineal descendants," and that the clause therefore violated the rule against perpetuities. Because all of the testatrix's brothers and sisters were deceased, the son contended that he was entitled to the property free and clear of the trust. The trial court agreed with his position.

The Supreme Court reversed, concluding that the testatrix's will, considered in its entirety, indicated her intent to benefit her son dur-

ing his lifetime and, upon his death, to benefit his surviving children, rather than "an indefinite succession of lineal descendants." The court stated:

> If the clause is considered out of relation to the rest of the will, the ruling seems justified. The word "issue" in its strict technical sense includes an indefinite succession of lineal descendants. And a devise or bequest to "issue" in this sense violates the rule against perpetuities and is void . . . . But courts are not required to indulge the presumption of technical use of words against the testamentary intent from a contextual construction of the will . . . . The presumptions are contrary to plaintiff's interpretation . . . . "A limitation or gift over to issue does not offend the rule against perpetuities where the context or surrounding circumstances show that the word issue is used in a limited sense as meaning issue living at a date within the period specified by the rule . . . ." (Citations omitted.)

*Id.* at 377, 128 S.E.2d at 872.

In the present case, the trust instrument provides that the trust created is to be "administered for the benefit of Sara Anne Hanes . . . ." Paragraph Four of the distributive provisions of the Trust Agreement directs that any remaining trust estate after Sara's death be distributed directly to "her issue" when "the youngest of such issue shall attain the age of twenty-one years . . . ." It is clear from the instrument that Sara was the primary object of Robert Hanes' bounty and that he intended to benefit future generations only upon Sara's death before final distribution. There, however, is no indication of any intent to delay final distribution beyond the time when, after Sara's death, her youngest child reached the age of twenty-one. Had he intended otherwise, there is ample indication that Mr. Hanes knew how to distribute the trust estate to distant generations; in Paragraph Five of the distributive provisions, he directed an ultimate disposition of the trust estate "to or among the heirs-at-law and next of kin of the said Sara Anne Hanes . . . ."

Appellants contend, however, that the language of the distributive clause directing distribution to Sara's surviving issue "in equal shares" requires distribution, *per capita,* to a class composed of her lineal descendants living at the time of her death. It is true that the words "in equal shares" to persons designated by their relationship to some ancestor are ordinarily construed to direct a *per capita* distribution. *Ex Parte Brogden,* 180 N.C. 157, 104 S.E. 177 (1920). However,

this general rule does not apply when a contrary intent appears from other provisions of the document. *Id.* Such a contrary intent on the part of Robert Hanes is evident, and we reject appellants' argument. As recited in Paragraph Five of the distributive provisions of the trust established for Sara Anne Hanes Willis, Robert Hanes simultaneously established another trust for the benefit of his other child, Frank Borden Hanes. In the event of Sara's death without issue (after the death of her mother), Mr. Hanes directed that the assets of Sara's trust be transferred to the Frank Borden Hanes trust, unless there are other children of the grantor living, *or dead leaving issue surviving*, in which case Mr. Hanes provides for the administration and distribution of the trust assets *"for the equal benefit of all of the Grantor's children."* (Emphasis added.) We believe these provisions establish Mr. Hanes' intent to benefit his children and their families equally, and consequently to benefit his grandchildren (or, if deceased, their representatives) only to the extent of their parents' share. Any other interpretation would result in the possibility of a disproportionate distribution of the trust estate among the families of Mr. Hanes' children, contrary to the distributive scheme which we believe he intended.

We hold that the interpretation given by the trial court to Paragraph Four of the distributive provisions of the Trust Agreement is consistent with the intent of the settlor, as reflected by the entire Trust Agreement and the circumstances surrounding its execution, and that such interpretation is in accord with well-established rules of construction and produces a reasonable and equitable result. Therefore, the judgment of the trial court will be affirmed.

Affirmed.

Judges JOHNSON and LEWIS concur.