FIRST CHARTER BANK, TRUSTEE OF THE LAST WILL AND TESTAMENT OF JOSEPH F. CANNON, DATED APRIL 26, 1932, PETITIONER v. AMERICAN CHILDREN'S HOME, STONEWALL JACKSON YOUTH DEVELOPMENT CENTER, THE MASONIC HOME FOR CHILDREN AT OXFORD, INC., BOY'S AND GIRLS' CLUB OF CABARRUS COUNTY, INC., NAZARETH CHILDREN'S HOME, INC., CONCORD FIRE DEPARTMENT, BARIUM SPRINGS HOME FOR CHILDREN, THE CHILDREN'S HOME, INC., FOREST HILL UNITED METHODIST CHURCH, GRANDFATHER HOME FOR CHILDREN, INC., STACY C. EGGERS, IV, AS ADMINISTRATOR CTA OF THE ESTATE OF ANNIE L. CANNON, JOSEPH ERVIN MORRIS, AS EXECUTOR OF THE ESTATE OF MARY CANNON MORRIS, R. MICHAEL ALLEN, AS ADMINISTRATOR CTA OF THE ESTATE OF JOSEPH F. CANNON, JR., AND JOHN DOE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ANNE CANNON STOUFFER, RESPONDENTS

No. COA09-1232

(Filed 4 May 2010)

**1. Declaratory Judgments— standard of review—motion to determine beneficiaries—evidence outside of pleadings considered**

The standard of review for an order or judgment in a nonjury declaratory judgment action was used by the Court of Appeals in a trust action where respondent-appellant asserted that a motion by petitioner-trustees was in effect a motion for judgment on the pleadings. The trial court clearly asserted that it carefully reviewed the pleadings and attached exhibits as well as all other matters of record and adjudicative facts.

**2. Trusts— virtual representative of estate—no one actually seeking to represent estate**

The trial court did not err in a trust matter when it found that the petitioner-trustee was not able to locate a person willing to reopen one of the estates involved or to serve as a representative. While a nephew-by-marriage filed a "Suggestion of Want of Jurisdiction," neither he nor anyone else actually sought to be named as personal representative of that estate.

**3. Trusts— virtual representation of missing estate—substantially similar to other estates**

The trial court did not err in a declaratory judgment action to interpret a trust by determining that three other estates could represent a missing estate. The respondent-appellant did not provide any argument as to how the estates involved differed in terms relevant to the question before the trial court.

## 4. Trusts— virtual representation—no conflict of interest

The trial court did not err when it found no conflict of interest between estates represented in an action to interpret a trust and another estate virtually represented by those estates where there was no evidence to support such an assertion.

## 5. Appeal and Error— preservation of issues—no assignment of error, argument or authority

Arguments in a declaratory judgment trust action relating to the ripeness of the controversy for adjudication were not addressed where they were not assigned error, argued in the briefs, or supported with authority.

## 6. Trusts— distribution of corpus—settlor's intention

The trial court did not err in a declaratory judgment action to interpret a trust by determining that the Settlor intended that the corpus of the trust remaining after 99 years should be distributed equally among the then-entitled charitable beneficiaries of the trust, rather than among the residuary beneficiaries of the estate.

Judge HUNTER, JR., Robert N., concurring.

Appeal by respondent Joseph Ervin Morris, as Executor of the Estate of Mary Cannon Morris, from order and judgment entered 23 February 2009 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 9 February 2010.

*Moore & Van Allen, PLLC, by Robert C. Bowers, Tonya L. Mitchell, and Andrea C. Chomakos, for petitioner-appellee.*

*Roy Cooper, Attorney General, by Gail E. Dawson, Special Deputy Attorney General, for respondent-appellee Stonewall Jackson Youth Development Center.*

*Edmundson & Burnette, L.L.P., by James T. Duckworth, III, for respondent-appellee The Masonic Home for Children at Oxford, Inc.*

*Hamilton Moon Stephens Steele & Martin, PLLC, by Keith J. Merritt, and City Attorney's Office, by Albert M. Benshoff, for respondent-appellee Concord Fire Department.*

*Womble Carlyle Sandridge & Rice, PLLC, by Elizabeth K. Arias and Sarah L. Buthe, for respondents-appellees The Children's Home, Inc., Nazareth Children's Home, Inc., and Barium Springs Home for Children.*

*Hartsell & Williams, PA, by Samuel F. Davis, Jr., for respondent-appellee Forest Hill United Methodist Church.*

*Respess & Jud, by W. Russ Johnson, III and W. Wallace Respess, Jr., for respondent-appellee Grandfather Home for Children, Inc.*

*Eggers, Eggers, Eggers, & Eggers, by Stacy C. Eggers, IV, for respondent-appellee Stacy C. Eggers, IV, as Administrator CTA of the Estate of Annie L. Cannon.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Adam P.M. Tarleton and H. Arthur Bolick, II, for respondent-appellant Joseph Ervin Morris, as Executor of the Estate of Mary Cannon Morris.*

MARTIN, Chief Judge.

Our recitation of the facts and procedural history of the case is limited to those events deemed relevant to the issues before us on appeal. When Joseph F. Cannon ("Settlor") died in 1939, he was survived by his wife, Annie L. Cannon, and their three children, Anne Cannon Reynolds (later Anne Cannon Stouffer), Mary E. Cannon (later Mary Cannon Morris), and Joseph F. Cannon, Jr. Prior to his death, Settlor executed a last will and testament dated 26 April 1932 (the "Will"), a codicil to the Will dated 9 June 1938 (the "First Codicil"), and a second codicil dated 8 December 1938 (the "Second Codicil").

The Will devised real and personal property to several named persons, including Settlor's wife and three children, and devised $1,000 each to several named charitable and service organizations and to Settlor's "trusted and efficient secretary," Clara Gillon. The Will further designated that "the rest, residue and remainder" of Settlor's estate should be divided in "four equal parts" among Settlor's wife and three children, with his wife's share "turned over to [her] as soon as practicable, to be hers absolutely," and his children's shares to be held in trust and "turn[ed] over and deliver[ed]" to each child "absolutely and fully discharged of any conditions whatsoever" "as each child reaches the age of twenty-eight years."

The First Codicil directed the executors of Settlor's estate to "turn over to the Citizens Bank and Trust Company, Concord, North Carolina, all stock held by [Settlor] in said Citizens Bank and Trust Company," and "to hold said stock for a period of ninety-nine (99)

years" in a trust designated as "The Joseph F. Cannon Christmas Trust" (the "Christmas Trust"). Citizens Bank and Trust Company ("petitioner-trustee")[1] was appointed as trustee of the Christmas Trust and directed to "disperse annually the income from such stock held in said trust for the purpose of giving the inmates of [ten named charitable and service] institutions happiness and cheer at Christmas Time." Each of the ten named institutions was to receive "[t]en per cent (10%) of the income [from the Christmas Trust] annually." Settlor directed "the trustees of the various [charitable and service] institutions named to spend the amount in such a manner that it will give the inmates the most cheer and pleasure during the Yuletide Season." In the event that any of the named institutions "cease[d] to exist, or should the trustees, or superintendents, or managers of any of the [named] institutions fail to carry out [Settlor's] directions as to the dispensation of the above fund," petitioner-trustee was directed to "divert the part of such institution to some other worthy institution and pay out same to them as long as they comply with the provisions [Settlor] ha[d] made." The First Codicil also provided that petitioner-trustee "shall be the sole and final judge in matters pertaining to the administration of this Fund." All parties agree that the First Codicil does not expressly state what is to become of the remaining corpus of the Christmas Trust upon the expiration of the 99-year Trust term.

The Second Codicil made additional devises of real and personal property and revoked several provisions of the Will. Among the revoked provisions were Settlor's devises of $1,000 each to the charitable and service organizations named in the Will, some of which had since been named as beneficiaries of the Christmas Trust in the First Codicil. However, Settlor did not revoke his devise of $1,000 to his "trusted and efficient secretary," Clara Gillon, and further provided that it was his "desire that [his] efficient secretary Miss Clara Gillon be retained as secretary to [his] estate at her present salary until said estate [wa]s finally settled." Settlor then directed that three hundred shares of stock held by him in Wiscassett Mills be "set aside" and "placed in trust" (the "Gillon Trust") with the Citizens Bank and Trust Company, Concord, North Carolina, which also served as trustee of the Christmas Trust. With respect to the Gillon Trust, petitioner-trustee was directed to "receive dividends from same and pay over immediately to Miss Clara Gillon same as long as she may live, deducting lawful charges from same for handling." Settlor further

---

1. According to the record, petitioner First Charter Bank previously conducted business as "Citizens Bank and Trust Company," and presently conducts business as "Fifth Third Bank."

provided, "[a]t the death of Miss Clara Gillon[,] I direct that the above shares of the Wiscassett Mills *revert back to the heirs of my estate,* share and share alike." (Emphasis added.)

On 18 July 2007, petitioner-trustee filed a petition for declaratory judgment in which it requested, among other things, that the trial court determine whether petitioner-trustee "may . . . at the termination of the [Christmas] Trust, distribute the Trust's assets to charitable entities as [it] in its discretion deems appropriate, consistent with [N.C.G.S.] § 36C-4-405(a)." In addition, "in an effort to ensure that any and all potentially interested parties [we]re represented," on 2 November 2007 and 25 September 2008, petitioner-trustee amended its petition and named as respondents to the action the estates of Settlor's wife and three children—designated as Stacy C. Eggers, IV, as Administrator CTA of the Estate of Settlor's wife Annie L. Cannon; John Doe, as personal representative of the Estate of Anne Cannon Stouffer; Joseph Ervin Morris, as Executor of the Estate of Mary Cannon Morris; and R. Michael Allen, as Administrator CTA of the Estate of Joseph F. Cannon, Jr.—and the current beneficiaries of the Christmas Trust, which include American Children's Home, Stonewall Jackson Youth Development Center, The Masonic Home for Children at Oxford, Inc., Boys and Girls Club of Cabarrus County, Inc., Nazareth Children's Home, Inc., Concord Fire Department, Barium Springs Home for Children, The Children's Home, Inc., Forest Hill United Methodist Church, and Grandfather Home for Children, Inc. (collectively the "charitable beneficiaries").

On or about 29 October 2008, petitioner-trustee filed its Motion to Ascertain Remainder Beneficiaries of the Christmas Trust. Petitioner-trustee requested that the trial court "declar[e] that the [Christmas] Trust's remainder beneficiaries will be the then-entitled charitable beneficiaries receiving income from the Trust at the expiration of the Trust term," stating that "[r]esolution of this issue is beneficial and necessary to guide the [petitioner-t]rustee's ongoing administration of the Trust for the remaining 30 years of its 99-year term when the remainder interests will be distributed." On 23 February 2009, the trial court entered its Order and Judgment on petitioner-trustee's Motion to Ascertain Remainder Beneficiaries of the Christmas Trust. The trial court first determined that the estate of Settlor's daughter Anne Cannon Stouffer (the "Stouffer Estate")—for which petitioner-trustee "was not able to locate a person willing to re-open the [estate] or to serve as [its] personal representative"—could be "virtually" represented pursuant to N.C.G.S. § 36C-3-304 "by each of

and any one of" the estates of Settlor's wife and Settlor's two other children (collectively the three "North Carolina Estates"). The trial court then concluded:

5. Under North Carolina law, a determination that the Christmas Trust is a wholly charitable trust is supported on multiple grounds:

a. The Settlor did not retain a reversionary interest in the Christmas Trust because a right of reversion must be expressly stated in the granting instrument. *See Station Associates, Inc. v. Dare County*, 350 N.C. 367, 513 S.E.2d 789 (1999) (holding that the North Carolina Supreme Court does not recognize "reversionary interests in deeds that do not contain express and unambiguous language of reversion."). Thus, the Settlor transferred fee simple ownership of the assets of the Christmas Trust.

b. The Court's responsibility is to "ascertain the intent of the settlor and to carry out that intent . . . deriving the settlor's intent from the language and purpose of the trust, construing the document as a whole." *Davenport v. Central Carolina Bank & Trust Co.*, 161 N.C. App. 666, 672[, 589 S.E.2d 367, 370] (2003). The Settlor's testamentary plan set forth in the Will, First Codicil and Second Codicil establishes that the Settlor's intent in creating the Christmas Trust was to provide for a charitable trust to benefit various charitable institutions. This was the Settlor's intent with respect to the distribution of income from the Christmas Trust during the 99-year period, as well as the distribution of any remaining assets at the expiration of the 99-year period.

c. N.C. Gen. Stat. § 36C-4A-1(b) states that "notwithstanding any provisions in the laws of this State or in the governing instrument to the contrary," the governing instrument of each trust that is a nonexempt charitable trust described in section 4947(a)(1) of the Internal Revenue Code is considered to contain a provision stating that "[u]pon any dissolution, winding up, or liquidation of the trust, its assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or shall be distributed to the federal government, or a state or local government for a public purpose."

   d. N.C. Gen. Stat. § 36C-4-413 states that if a "charitable trust
      becomes unlawful, impracticable, impossible to achieve, or
      wasteful: (1) The trust does not fail, in whole or in part; (2)
      The trust property does not revert to the settlor or the set-
      tlor's successors in interest; and (3) The court may apply cy
      pres to modify . . . the trust by directing that the trust prop-
      erty be applied or distributed, in whole or in part, in a man-
      ner consistent with the settlor's charitable purposes."

   e. In accordance with N.C. Gen. Stat. §§ 36C-4A-1(b) and
      36C-4-413, the fact that the language of the First Codicil
      does not contain specific instructions regarding disposition
      of the assets of the Christmas Trust upon the expiration of
      the 99-year period does not cause the charitable gift to the
      Christmas Trust to fail and the assets of the Christmas
      Trust to revert to the Settlor's residuary beneficiaries
      because the Christmas Trust is a nonexempt charitable
      trust under section 4947(a)(1) of the Code and the doctrine
      of *cy pres* would permit the Court to modify the Christmas
      Trust to avoid this result.

Accordingly, the trial court decreed that the estates of Settlor's wife,
Annie L. Cannon, and three children, Anne Cannon Stouffer, Mary
Cannon Morris, and Joseph F. Cannon, Jr. (collectively the four
"residuary beneficiaries"), "had and have no interest in the Christmas
Trust, and are not and will not be remainder beneficiaries of the
Christmas Trust, to the extent that there exists any remainder inter-
est in the Christmas Trust." On 25 March 2009, respondent-appellant
Joseph Ervin Morris, as Executor of the Estate of Mary Cannon
Morris, gave timely notice of appeal from the trial court's 23 February
2009 Order and Judgment.

Appellate review is limited to those questions "clearly" defined
and "presented to the reviewing court" in the parties' briefs, in which
"arguments and authorities upon which the parties rely in support of
their respective positions" are to be presented. *See* N.C.R. App. P.
28(a) (amended Oct. 1, 2009). "It is not the role of the appellate courts
. . . to create an appeal for an appellant," *Viar v. N.C. Dep't of
Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied*, 359 N.C.
643, 617 S.E.2d 662 (2005), nor is it "the duty of the appellate courts
to supplement an appellant's brief with legal authority or arguments
not contained therein." *See State v. Hill*, 179 N.C. App. 1, 21, 632
S.E.2d 777, 789 (2006). Accordingly, the questions properly preserved

and presented for appellate review in this case are as follows: (I) whether the trial court erred when it determined that the Stouffer Estate and all beneficiaries thereof and all persons interested therein could be "virtually" represented pursuant to N.C.G.S. § 36C-3-304 "by each of and any one of" the three North Carolina Estates; and (II) whether the trial court erred when it determined that respondent-appellant "had and ha[s] no interest in the Christmas Trust, and [is] not and will not be [a] remainder beneficiar[y] of the Christmas Trust, to the extent that there exists any remainder interest in the Christmas Trust," upon the expiration of the Trust.

"The standard of review of a judgment rendered under the declaratory judgment act is the same as in other cases." *Miesch v. Ocean Dunes Homeowners Ass'n*, 120 N.C. App. 559, 562, 464 S.E.2d 64, 67 (1995), *disc. review denied*, 342 N.C. 657, 467 S.E.2d 717 (1996); *see also* N.C. Gen. Stat. § 1-258 (2009) ("All orders, judgment and decrees under [Article 26, 'Declaratory Judgments,'] may be reviewed as other orders, judgments and decrees."). "Thus, where a declaratory judgment action is heard without a jury and the trial court resolves issues of fact, the court's findings of fact are conclusive on appeal if supported by competent evidence in the record, even if there exists evidence to the contrary, and a judgment supported by such findings will be affirmed." *Miesch*, 120 N.C. App. at 562, 464 S.E.2d at 67; *Nationwide Mut. Ins. Co. v. Allison*, 51 N.C. App. 654, 657, 277 S.E.2d 473, 475 ("The rule thus applicable is that the court's findings of fact are conclusive if supported by any competent evidence; and a judgment supported by such findings will be affirmed, even though there is evidence which might sustain findings to the contrary, and even though incompetent evidence may have been admitted."), *disc. review denied*, 303 N.C. 315, 281 S.E.2d 652 (1981). "The function of our review is, then, to determine whether the record contains competent evidence to support the findings; and whether the findings support the conclusions." *Allison*, 51 N.C. App. at 657, 277 S.E.2d at 475. "However, the trial court's conclusions of law are reviewable *de novo*." *Cross v. Cap. Transaction Grp.*, 191 N.C. App. 115, 117, 661 S.E.2d 778, 780 (2008) (internal quotation marks omitted), *disc. review denied*, 363 N.C. 124, 672 S.E.2d 687 (2009).

[1] In the present case, petitioner-trustee moved the trial court pursuant to N.C.G.S. § 1-253 *et seq.* to "declar[e] that the [Christmas] Trust's remainder beneficiaries will be the then-entitled charitable beneficiaries receiving income from the Trust at the expiration of the Trust term." The matter was heard by the trial court without a jury

and the court entered its Order and Judgment on 23 February 2009 in which it made findings of fact and conclusions of law on petitioner-trustee's motion. Respondent-appellant asserts petitioner-trustee's Motion to Ascertain Remainder Beneficiaries "was, *in effect,* a motion for judgment on the pleadings under [N.C.G.S. § 1A-1, Rule 12(c),] because no matters outside the pleadings were presented to or considered by the trial court." (Emphasis added.) However, in its 23 February 2009 Order and Judgment from which respondent-appellant appeals, the trial court clearly asserts that it "carefully reviewed the pleadings and the attached exhibits *as well as all other matters of record and adjudicative facts.*" (Emphasis added.) The record reveals that the trial court considered matters presented by the parties beyond the pleadings, and made specific findings and conclusions of law in consequence thereof. Thus, we review this matter according to the standard of review for an order or judgment in a nonjury declaratory judgment action as described above.

I.

In 2005, when our General Assembly adopted a revised version of the Uniform Trust Code for North Carolina, it codified the long-recognized doctrine of virtual representation in N.C.G.S. § 36C-3-304. *See* 2005 Sess. Laws 345, 357, ch. 192, § 2; *see also Hales v. N.C. Ins. Guar. Ass'n,* 337 N.C. 329, 336-38, 445 S.E.2d 590, 595-96 (1994) (describing, albeit with disfavor, the development, decline, and revival of the doctrine of virtual representation). N.C.G.S. § 36C-3-304 provides that a "person"—recognized as including an individual, an estate, and a trust, *see* N.C. Gen. Stat. § 36C-1-103(12) (2009)—whose "identity or location is unknown and not reasonably ascertainable," "may be represented by and bound by another having a substantially identical interest with respect to the particular question or dispute, but only to the extent that there is no conflict of interest between the representative and the person represented with respect to the particular question or dispute." N.C. Gen. Stat. § 36C-3-304 (2009).

In the present case, respondent-appellant first argues that the trial court erred in proceeding to determine the issue of who are the remainder beneficiaries of the Christmas Trust because the issue "was not ripe for adjudication because a necessary party was not properly represented before the court." Respondent-appellant contends the Stouffer Estate and all beneficiaries thereof and all persons interested therein could not be "represented and bound by each of and any one of the [three] North Carolina Estates pursuant to

[N.C.G.S.] § 36C-3-304" because, at the time of the 5 November 2008 hearing on petitioner-trustee's Motion to Ascertain Remainder Beneficiaries: (A) the identity and location of the personal representative of the Stouffer Estate was both known and reasonably ascertainable; and (B) the interests of the Stouffer Estate and the interests of the three North Carolina Estates were not "substantially identical." We disagree.

A.

[2] Respondent-appellant first suggests the trial court erred when it found that "[p]etitioner[-trustee] was not able to locate a person willing to re-open the Stouffer Estate or to serve as a personal representative," and that, "[a]s the Stouffer Estate has not been re-opened, it has not appeared personally or through its counsel nor otherwise participated directly in this proceeding."

The trial court found that Wilbur L. Hazlegrove was not a party to the proceeding, but that he "has asserted that he and his relatives have an interest in the Stouffer Estate." The trial court also found that Mr. Hazlegrove, "who is a member of the Virginia State Bar, did not seek leave to intervene in these proceedings and did not appear at the hearing, although he had actual notice of th[e] proceeding and filed a 'Suggestion of Want of Jurisdiction,'" in which Mr. Hazlegrove "assert[ed] that the [trial c]ourt may lack jurisdiction over certain persons whom Hazlegrove believes may have an interest in th[e] proceeding." Respondent-appellant does not assign error to these findings and concedes, "[t]o date, . . . to [a]ppellant's knowledge the Stouffer Estate has not been re-opened, and no administrator, executor, or other personal representative has appeared on behalf of the Stouffer Estate." However, respondent-appellant asserts that Mr. Hazlegrove—who is said to be a nephew by marriage of Settlor's daughter, Anne Cannon Stouffer—"attempt[ed] to participate in the proceedings" by filing his 31 October 2008 Suggestion of Want of Jurisdiction. While the parties appear to agree that Mr. Hazlegrove may have an interest in the Stouffer Estate, neither he nor anyone else actually sought to be named as personal representative of the Stouffer Estate. Accordingly, we conclude the trial court was correct when it determined that "[petitioner-trustee] was not able to locate a person willing to re-open the Stouffer Estate or serve as a personal representative. Therefore, the Stouffer Estate, by and through its appropriate representative, is not known or locatable."

B.

[3] Respondent-appellant next suggests the trial court erred by determining that each and any one of the three North Carolina Estates could properly represent the Stouffer Estate pursuant to N.C.G.S. § 36C-3-304 because, he argues, "it is by no means clear" that the interests of the Stouffer Estate and the interests of the North Carolina Estates were "substantially identical." To bolster this assertion, respondent-appellant claims that, because the residuary beneficiary of the estate of Mary Cannon Morris is said to be the Mary Cannon Morris Charitable Foundation, while the residuary beneficiaries of the Stouffer Estate are said to be "private individuals," "[t]he interests of an estate whose ultimate beneficiaries are charitable organizations simply cannot be described as 'substantially identical' to the interests of a group of private individuals, such as the individuals *allegedly* entitled to share in the residue of the Stouffer Estate." (Emphasis added.) However, respondent-appellant has failed to provide any argument as to *why* the identity of the residuary beneficiaries of the residuary beneficiaries of Settlor's Will are in any way relevant to the question at issue in the present case.

According to respondent-appellant, "[t]he ultimate question in this case is this: Who should receive the assets of the Joseph F. Cannon Christmas Trust at the end of the Trust's express term of 99 years, where the Trust is silent as to remainder beneficiaries?" Respondent-appellant concedes that the answer to this question is limited to one of two choices: either (1) the Christmas Trust corpus should be distributed to "the current income beneficiaries or to charities or governmental entities selected by [petitioner-trustee] to replace any of the current income beneficiaries prior to the end of the Trust term," *or* (2) the remaining corpus should "revert to the residuary beneficiaries of Joseph F. Cannon's estate, including [respondent-appellant] as executor of the estate of Joseph F. Cannon's daughter, Mary Cannon Morris." In other words, as respondent-appellant admits and the trial court has recognized, respondent-appellant asserts his right to take a share of the remaining corpus of the Christmas Trust due to his identity as the executor of the estate of a residuary beneficiary of Settlor's Will. This identity is one which the estate represented by respondent-appellant *shares equally* with the Stouffer Estate according to the express terms of Settlor's Will, since the parties agree and the record reflects that Settlor's Will designated that "the rest, residue and remainder" of Settlor's estate should be divided "into *four equal parts*" among his

wife and three children, (emphasis added), and since the estate represented by respondent-appellant, like the Stouffer Estate, seeks to claim one-fourth of the remaining corpus of the Christmas Trust as a residuary beneficiary of Settlor's Will. In the absence of any argument as to how the estates of Settlor's two daughters differ in terms that are relevant to the question before the trial court below, we conclude the trial court was correct when it found that "[t]he interests held by the North Carolina Estates and the Stouffer Estate in this proceeding are substantially identical."

**[4]** Respondent-appellant also attempts to challenge the trial court's decision to allow the North Carolina Estates to virtually represent the Stouffer Estate based on the unsubstantiated assertion in his brief that the trial court "may have been subjecting the North Carolina Estates to further litigation" as a result of "hostility toward these proceedings" by the Stouffer Estate. However, the record contains no evidence to support such an assertion, and, in the absence thereof, we cannot conclude the trial court erred when it found that "[n]o conflict of interest exists between any of the North Carolina Estates and the Stouffer Estate." Therefore, we conclude the trial court did not err when it determined that the Stouffer Estate could be represented and bound by each and any one of the North Carolina Estates.

**[5]** Finally, at oral argument, respondent-appellant attempted to raise issues with respect to the ripeness of the controversy for adjudication for reasons other than that stated in his assignment of error and discussed in his brief, i.e., that the matter below was "not ripe for adjudication because a necessary party was not properly represented before the court." In its order the trial court concluded: "This matter is ripe for adjudication because a determination as to whether the Christmas Trust is charitable affects the current and ongoing administration of the Christmas Trust." There has been no assignment of error to this conclusion of law, nor have the parties argued in their briefs, or presented supporting authority for, the issue of ripeness other than with respect to the trial court's determination that the Stouffer Estate could be virtually represented by each and any one of the three North Carolina Estates. Therefore, as instructed in *Viar*, we decline to construct arguments for the parties or to address issues not presented in the parties' briefs. *See Viar*, 359 N.C. at 402, 610 S.E.2d at 361; N.C.R. App. P. 10(c)(1) (amended Oct. 1, 2009); N.C.R. App. P. 28(a) (amended Oct. 1, 2009).

II.

[6] Respondent-appellant next contends the trial court erred by determining that, if any principal of the Christmas Trust remained at the expiration of the Trust term, Settlor intended that the remaining Trust corpus should be distributed equally among the then-entitled charitable beneficiaries of the Trust, rather than among the residuary beneficiaries of his estate. "The intent of the testator is the polar star that must guide the courts in the interpretation of a will." *Coppedge v. Coppedge*, 234 N.C. 173, 174, 66 S.E.2d 777, 778, *reh'g denied*, 234 N.C. 747, 67 S.E.2d 463 (1951). Accordingly, "[i]t is a fundamental rule that, when interpreting wills and trust instruments, courts must give effect to the intent of the testator or settlor, so long as such intent does not conflict with the demands of law and public policy." *Wachovia Bank v. Willis*, 118 N.C. App. 144, 147, 454 S.E.2d 293, 295 (1995) (citing *N.C. Nat'l Bank v. Goode*, 298 N.C. 485, 489, 259 S.E.2d 288, 291 (1979)). In order to give effect to a testator's intent when construing a will, the intent which controls is "that which is gleaned from the writing of the testament in its entirety. Every word and phrase in the instrument has its place and none ought to be rejected. Each should be given a meaning that, wherever possible, harmonizes with the other. Every string should give its sound." *Goode*, 298 N.C. at 489, 259 S.E.2d at 291 (internal quotation marks omitted); *Heyer v. Bulluck*, 210 N.C. 321, 326, 186 S.E. 356, 359 (1936) (" 'A word is not a crystal, transparent and unchangeable; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used . . . .' " (quoting *Towne v. Eisner*, 245 U.S. 418, 425, 62 L. Ed. 372, 376 (1918)); *see also Coppedge*, 234 N.C. at 174, 66 S.E.2d at 778 ("This intent is to be gathered from a consideration of the will from its four corners . . . ."). Similarly, "[t]he intent of one who creates a trust is to be determined by the language he chooses to convey his thoughts, the purpose he seeks to accomplish, and the situation of the several parties to or benefited by the trust." *Callaham v. Newsom*, 251 N.C. 146, 149, 110 S.E.2d 802, 804 (1959); *see also Davenport v. Cent. Carolina Bank*, 161 N.C. App. 666, 672, 589 S.E.2d 367, 370 (2003) ("In construing the terms of a trust, '[o]ur responsibility is to ascertain the intent of the settlor and to carry out that intent . . . deriv[ing] the settlor's intent from the language and purpose of the trust, construing the document as a whole.' " (omission and alterations in original) (quoting *Wheeler v. Queen*, 132 N.C. App. 91, 95, 510 S.E.2d 195, 198, *disc. review denied*, 350 N.C. 385, 536 S.E.2d 320 (1999))).

"[T]he law of trusts recognizes that equity will infer an intent to give the remainder interest in the [trust] principal to the income beneficiary when there is no express disposition of the principal provided for by the testator." *Betts v. Parrish*, 312 N.C. 47, 56, 320 S.E.2d 662, 667 (1984) (citing George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 182, at 357 (rev. 2d ed. 1979)). "Absent an express disposition of the principal [of a trust] by the testator, an implied gift can result if there is an implied intent on the part of the testator that an additional interest be given to an income beneficiary." *Id.* (citing Bogert & Bogert, *The Law of Trusts and Trustees* § 182, at 354-55). "Whether or not a gift is implied depends upon the testator's intention derived from his entire plan of giving in the will." Bogert & Bogert, *The Law of Trusts and Trustees* § 182, at 358.

"[T]he doctrine of devise or bequest by implication is well established in our law." *Finch v. Honeycutt*, 246 N.C. 91, 98, 97 S.E.2d 478, 484 (1957). However, "[d]espite long-standing acceptance of this doctrine, a gift by implication is not favored in the law and cannot rest upon mere conjecture." *Wing v. Wachovia Bank & Trust Co.*, 301 N.C. 456, 464, 272 S.E.2d 90, 96 (1980). Nevertheless, " '[i]f a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express or formal words,' " " 'the court may supply the defect by implication, and so mould the language of the testator as to carry into effect, so far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared.' " *Finch*, 246 N.C. at 98, 97 S.E.2d at 484 (quoting *Burcham v. Burcham*, 219 N.C. 357, 359, 13 S.E.2d 615, 616 (1941)).

Here, the parties do not dispute that, in the First Codicil, Settlor instructed that the assets comprising the Christmas Trust were to be held in trust "for a period of ninety-nine (99) years." Neither do they dispute that Settlor empowered petitioner-trustee to divert the Trust income designated for the benefit of any of the ten named charitable institutions "to some other worthy institution and pay out same to them" "[s]hould any of the [ten named charitable] institutions cease to exist, or should the trustees, or superintendents, or managers of any of the [named] institutions fail to carry out [Settlor's] directions as to the dispensation" of the Christmas Trust. Thus, based on the plain language of Settlor's First Codicil, it seems evident that Settlor intended that the Trust should keep to its charitable purpose "of giving the inmates of the mentioned institutions happiness and cheer at Christmas Time" for the duration of the 99-year Trust term.

Additionally, as the trial court found and the evidence in the record shows, in Settlor's Will, Settlor directed that the "rest, residue and remainder" of his estate should be divided into "four equal parts" and "*turned over*" to his wife and three children, in accordance with the terms of the Will. (Emphasis added.) Similarly, when designating which assets were to comprise the Christmas Trust in the First Codicil, Settlor "direct[ed] that [his] Executors . . . *turn over* to the Citizens Bank and Trust Company, Concord, North Carolina, all stock held by [him] in said Citizens Bank and Trust Company." (Emphasis added.) Conversely, when Settlor created the Gillon Trust in the Second Codicil, he directed that (1) the assets comprising the Gillon Trust should be "*set aside*" and held in trust for the income beneficiary Clara Gillon, and (2) the assets should "*revert back* to the heirs of [his] estate, share and share alike" upon the death of the income beneficiary. (Emphases added.) Thus, although Settlor used the Second Codicil to revoke and revise several provisions of his Will, Settlor did not choose to revise the establishing language of the Christmas Trust in the First Codicil to indicate that the assets of the Christmas Trust should "revert back" to his residuary beneficiaries upon the expiration of the Christmas Trust, even though he chose to provide, using such language, that the assets of the Gillon Trust would "revert back" upon the expiration of that trust. Since Settlor directed that the assets held in the Christmas Trust were to be "turn[ed] over" to petitioner-trustee, and since Settlor did not modify the establishing language of the Trust or choose to indicate that the assets of the Christmas Trust should "revert back" to the residue of his estate when he later created the Gillon Trust which *itself* included such an express directive, we believe the trial court correctly concluded that the language of Settlor's whole will indicates that Settlor did not intend for the remaining assets held in the Christmas Trust to "revert back" to his residuary beneficiaries at the expiration of the Trust.

Next, the evidence before the trial court shows that Settlor specifically directed that the "rest, residue and remainder of [his] estate [shall be held] *for the benefit of* [his] wife, Annie L. Cannon, and [his] daughters, Anne Cannon Reynolds, and Mary E. Cannon, and [his] son, Joseph F. Cannon, Jr." and divided "into four equal parts." (Emphasis added.) Settlor further provided that one of the four parts of the residuary estate "shall be turned over to [his] wife, Annie L. Cannon, *as soon as practicable to be hers absolutely*," and directed that the remaining three parts "shall [be] turn[ed] over and deliver[ed] to" each of his three children "as each child reaches the

age of twenty-eight years" "to be the property of such child *absolutely and fully discharged* of any conditions whatsoever;" "[Settlor's] purpose and intention being that *final settlement be made with each child as she or he reaches the age of twenty-eight years*, at which age they shall have gained a more mature knowledge of the value of their property." (Emphases added.) Thus, because Settlor directed that his wife's part of the residuary estate would be turned over "as soon as practicable to be hers absolutely," and that his children's "final settlement" would be made "as she or he reaches the age of twenty-eight years," a reading of the plain language requires a conclusion that Settlor did not conceive of nor intend for there to be any further assets directed to the residue of his estate after his children reached the age of twenty-eight years, with the exception of the assets held in the Gillon Trust in the event that Miss Gillon were to live beyond any or each of his children's twenty-eighth birthdays. Moreover, it "cannot reasonably be supposed" that Settlor would have believed that his wife and children would live to see the expiration of the 99-year Trust term and, thus, Settlor would have known that his wife and children would not derive any benefit from receiving the remaining corpus of the Christmas Trust through his residuary estate. *See Burney v. Holloway*, 225 N.C. 633, 637, 36 S.E.2d 5, 8 (1945) (stating that, in order for a court to determine that a testator made a devise or bequest by implication, the "[p]robability must be so strong that a contrary intention cannot reasonably be supposed to exist in testator's mind" (internal quotation marks omitted)). Since Settlor created the trust for his residuary estate for the express purpose of benefitting his wife and three children, we must conclude that a review of Settlor's whole will demonstrates that Settlor did not intend for the remaining corpus of the Christmas Trust to pass to his residuary beneficiaries. Instead, we agree with the trial court that Settlor's Will, the First Codicil, and the Second Codicil, when read together, demonstrate that Settlor must have intended that, after the charitable beneficiaries enjoyed a guaranteed period of ninety-nine years of uninterrupted support from the income of the Christmas Trust, any remaining Trust corpus was intended to be distributed to the then-entitled charitable beneficiaries. Therefore, by concluding that the residuary beneficiaries "had and have no interest in the Christmas Trust, and are not and will not be remainder beneficiaries of the Christmas Trust, to the extent that there exists any remainder interest in the Christmas Trust," the trial court properly carried into effect Settlor's intention, which was not bequeathed by express and formal words, *see Burcham*, 219 N.C. at 359, 13 S.E.2d at 616, that the

charitable beneficiaries of the Christmas Trust so designated at the time of its expiration should receive any remaining corpus of the Christmas Trust.

Affirmed.

Judge JACKSON concurs.

Judge HUNTER, JR. concurs with separate opinion.

HUNTER, JR., Robert N., Judge, concurring.

With regard to the application of *cy pres*, I reach the same result as the majority through a slightly different logic, which may have some importance to a future application of the doctrine of *cy pres*. Under N.C. Gen. Stat. § 36C-1-112 (2009), "[t]he rules of construction that apply in this State to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." The court below, in my view, erred in selecting *Station Assoc., Inc. v. Dare County*, 350 N.C. 367, 513 S.E.2d 789 (1999), as authority for the proposition that fee simple ownership of the assets of the Christmas Trust was transferred by virtue of the language of the First Codicil. I disagree with this finding because *Dare County* concerns the interpretation of a deed and not a will. The majority's opinion avoids this error.

It is my opinion that the proper construction of the Will in the case *sub judice* involves the application of the presumption against intestacy, the presumption that a person knows the law, and the consequences of the application of these presumptions to the fact that the testator here failed to include in the Will or the First or Second Codicils a comprehensive residuary clause. *Austin v. Austin*, 160 N.C. 367, 368, 76 S.E. 272, 272 (1912) ("The presumption is against intestacy."). As the majority correctly notes, the residuary clause in the Will served as a "final settlement" with the residue beneficiaries upon their reaching the age of twenty-eight. Given the definite time frame for the termination of the accumulation of the residue, it is reasonable, to me, to conclude that Item Eleventh is not comprehensive in its ability to dispose of property acquired by the estate after the "final settlement" date. Thus, since the residuary clause has expired and cannot now devise to the residuary beneficiaries any more property, it is apparent to me that the only manner in which the heirs of

Joseph Cannon can take the remainder interest in the Christmas Trust is through intestacy.

The need for a court to declare the intent of the testator only arises where there is no direction from the testator. Had the Will contained a more comprehensive residuary clause, even if the clause was not contained within specific language of the First Codicil establishing the Christmas Trust, then I believe such a residuary clause would fully dispose of the remainder interest here at issue. *See Ford v. McBrayer*, 171 N.C. 420, 88 S.E. 736 (1916) (A "residuary clause . . . disposes of all other property of the testator."); *Hollowell v. Hollowell*, 18 N.C. App. 279, 196 S.E.2d 820 (1973) (property devised in codicil subject to residuary clause of effective will). However, as discussed by the majority, the method chosen by Joseph Cannon in Item Eleventh does not comprehensively dispose of the residuary estate.

Appellants argue that this Court should apply a theory of resulting trust to the corpus of the Christmas Trust, which would result in the bank shares constituting the trust to revert to the residuary beneficiaries of the Will. In support of this position, appellants cite The Restatement (First) of Trusts:

> Where the owner of property gratuitously transfers it upon a trust which is properly declared but which is fully performed without exhausting the trust estate, the trustee holds the surplus upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust of the surplus should arise.

Restatement (First) of Trusts § 430 (1935).[2]

However, even if we were to apply this rule in order to achieve the result sought, the trial court would have to determine that part of Joseph Cannon's estate passed through intestacy. Furthermore, the court would have to ignore the legal presumption that Joseph Cannon did not know the law exigent in 1932, and that he would not have intended this law to be applied in interpreting his intention.

In North Carolina, now and in 1932, there is a presumption against intestacy, and the burden is on an heir claiming intestacy to rebut such a presumption. *Austin*, 160 N.C. at 368, 76 S.E. at 272. Other than the language of Item Eleventh, there is no evidence intro-

---

2. Appellants point out that this provision of the Restatement was published in 1935, three years before the execution of the First Codicil.

duced by the appellants to rebut the presumption that Joseph Cannon did not intend to dispose of his entire estate through the Will. The contention that the Will, upon the expiration of the Christmas Trust, requires that the corpus of the trust be conveyed to the residuary beneficiaries, supports, rather than rebuts, the application of this presumption.

As this State's Supreme Court has said, where there is "an important failure to complete the scheme of testamentary disposition so as to provide for contingencies too obvious to be ignored, especially those which might interfere with the expressed testamentary intent with regard to the particular legacy or devise, raises a strong presumption that the testator understood himself to be making a final disposition in his gift of the property." *Coddington v. Stone*, 217 N.C. 714, 720, 9 S.E.2d 420, 424 (1940). Having no evidence to the contrary, the trial court here was justified in using this presumption to imply a gift of the corpus to the income beneficiaries.

In my view, there are two classes of possible income beneficiaries of the corpus in this case: the first is the charitable institutions to which the income was given to distribute to their wards, inmates, or employees; and the other is to the wards, inmates, and employees themselves. Because it is my opinion that the disposition of the corpus of the trust to the latter would be "impractical" within the meaning of *cy pres*, I think that the trial court was justified in applying *cy pres* and finding that the remainder interest of the trust should be distributed in 2039 among those charitable organizations receiving annual distributions from the Christmas Trust.